**STATE of Tennessee, Appellee,**

v.

**Joseph BARNETT, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Nov. 13, 1995.

Martha Yoakum, District Public Defender, David L. Glasgow, Tom Kimball, Assistant Public Defenders, Tazewell, for appellant.

Charles W. Burson, Attorney General & Reporter, Kimbra R. Spann, Assistant Attorney General, Nashville, William Paul Phillips, District Attorney General, Shane Sexton, Assistant District Attorney General, Jacksboro, for appellee.

## OPINION

ANDERSON, Chief Justice.

We granted this appeal to determine whether an indigent defendant in a non-capital case is entitled to the appointment of an independent psychiatric expert at state expense to assist the defense in trial preparation. Both the trial court and the Court of Criminal Appeals denied the defendant's request for expert assistance. We conclude that when a defendant in a non-capital case demonstrates to the trial court in an *ex parte* proceeding that his sanity at the time of the offense is to be a significant factor at trial, the federal constitution, at a minimum, requires the State to provide the defendant access to a competent, independent psychiatric expert. Because in this case, the defendant failed to make the required threshold showing of "particularized need," we affirm the judgment of the Court of Criminal Appeals.

### BACKGROUND

In April of 1991, the defendant, Joseph Barnett, was convicted of first-degree murder and sentenced to life in prison. The defendant did not dispute the facts of the killing, but instead relied upon the defenses of insanity and voluntary intoxication. At trial, eyewitness testimony established that on June 27, 1990, the defendant shot his uncle with a shotgun, inside the defendant's grandmother's home. The defendant was extremely intoxicated at the time of the killing.

Other proof established that earlier, in 1983, the defendant had suffered severe injuries in a fire resulting in amputation of both his legs and loss of use of his hand. Because of the extent of the amputations, the defendant was not able to utilize artificial legs. He was unable to care for himself and lived with his mother and aunt prior to the killing. The defendant testified that it was difficult for him to cope with his disabilities. With regard to the killing, the defendant testified that he loved his uncle, believed his uncle had moved to Kentucky and was not dead, and that he did not intend to kill his uncle.

The proof demonstrated that Barnett also has a history of mental and emotional distur-

bance. He was admitted to a psychiatric hospital in Michigan in 1971 after he assaulted his mother. After an altercation with his family in January of 1989, Barnett complained of "black out spells" and of being "uncontrollable," and was transported by police to the emergency room at the Claiborne County hospital on January 26, 1989, but was discharged the next day into police custody.

There was further testimony that on February 22, 1989, the defendant was again taken to the emergency room at Claiborne County Hospital complaining of depression. From there he was transported to Lakeshore Mental Health Institute for treatment. The medical records at Lakeshore indicate that he was depressed, unable to control his temper, and had engaged in threatening behavior. Barnett was diagnosed as suffering from an "adjustment disorder with mixed disturbance of emotion and conduct, [and] alcohol dependency." Various medications were prescribed, and he was referred for alcohol and drug treatment programs, but he refused. The defendant was discharged on March 24, 1989, after apparent improvement and after indicating that he no longer thought of harming himself or others.

Subsequently, on May 28, 1990, Barnett again visited the emergency room at Claiborne County Hospital, complaining of a "nervous condition" and stating that he "need[ed] to go back to Lakeshore." Against the advice and instructions of the staff, Barnett left the emergency room.

Following the June 27, 1990, murder of his uncle, Barnett was admitted to Lakeshore Mental Health Institute on January 16, 1991, for a forensic evaluation. He was diagnosed with "anti-social personality disorder, alcohol dependency, and substance dependency." Dr. Charles Shin, the staff psychiatrist who examined Barnett upon admission, testified that anti-social personality disorder is not a mental defect or disease. Based upon the evaluation, Dr. Shin concluded and testified that Barnett was competent to stand trial and was sane at the time of the commission of the offense.

Although neither the motion nor the order is in the record, a discussion between counsel and the trial court indicate that five days before trial, Barnett moved the court for an order appointing a state-funded psychiatric expert to assist the defense. Defense counsel said that he had been informed by a neuropsychologist who reviewed the findings of the Lakeshore forensic evaluation that the defendant possibly has cognitive brain damage which affects his mental ability and capacity to understand his actions. The psychologist suggested a CT scan and said that it would probably not reveal any degenerative disease of the brain, but might show the extent of any thought pattern disorder.

The trial court denied the motion for appointment of an expert, but allowed the CT scan which was apparently completed the day before trial. Defense counsel was orally advised by a physician that the CT scan was normal. The physician interpreting the results agreed with the neuropsychologist that the CT scan would not detect subtle abnormalities. The trial court again denied the defendant's request for expert assistance. The case proceeded to trial, and the defendant was convicted of first-degree murder and sentenced to life in prison.

On appeal to the Court of Criminal Appeals, Barnett argued that the trial court should have appointed a psychiatric expert to aid in the preparation and implementation of his defense. The Court of Criminal Appeals acknowledged that the United States Supreme Court in a capital case has held "that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake v. Oklahoma,* 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985). Concluding that the *Ake* holding is limited to capital cases and that there is no Tennessee statutory authority requiring appointment of an expert in non-capital cases, the Court of Criminal Appeals affirmed the trial court's denial of the defendant's motion for appointment of an expert at State expense.

We granted the defendant's appeal to decide whether a non-capital defendant is constitutionally entitled to the assistance of a state-funded psychiatric expert. We now affirm the Court of Criminal Appeals' judgment, on the separate grounds stated below.

## RIGHT TO STATE–FUNDED PSYCHIATRIC EXPERT

In this Court, the defendant asserts that the Court of Criminal Appeals erroneously limited the holding of *Ake* to capital cases. He argues that the denial of his motion for appointment of a psychiatric expert deprived him of his right to a fair trial guaranteed by the Due Process Clause of both the Tennessee and the United States Constitutions. *See* U.S. Const. amend. XIV; Tenn. Const. Art. I, § 8. The State first argues that *Ake* was a capital case and is limited in application, as the Court of Criminal Appeals held, to capital cases. Assuming *Ake* applies to non-capital cases, however, the State asserts that the trial court correctly denied the motion because the defendant failed to make the threshold showing of particularized need required under *Ake.*

Initially, we note that there is no Tennessee statute authorizing appointment of experts at state expense for indigent non-capital defendants. *Cf.* Tenn.Code Ann. § 40–14–207(b) (1990 and Supp.1994), and Tenn. Sup.Ct.R. 13 (governing appointment of experts in capital cases). Accordingly, we must determine whether the right claimed is of constitutional dimension.

In *Ake,* the United States Supreme Court considered the issue of "whether the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question." *Id,* 470 U.S. at 70, 105 S.Ct. at 1090.

The Court began its analysis by reiterating the well-established rule that when a State brings its judicial power to bear against an indigent defendant in a criminal proceeding, it must take steps to insure that the accused has a fair opportunity to present his defense. *Ake,* 470 U.S. at 76, 105 S.Ct. at 1092. The Court emphasized that this principle of law is grounded in the Fourteenth Amendment's due process guarantee of fundamental fairness and "derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Id.* While a State need not provide an indigent defendant with all the assistance his wealthier counterpart might buy, the Court stressed that fundamental fairness requires a State to provide an indigent defendant with the "'basic tools of an adequate defense or appeal.'" *Ake,* 470 U.S. at 77, 105 S.Ct. at 1092, quoting *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971).[1]

In determining whether or not participation of a psychiatrist is important enough to the preparation of the defense as to be characterized as one of the "basic tools," the Court applied a three-factor balancing test and considered (1) the private interest affected by the action of the State; (2) the governmental interest affected if the safeguard is provided; and (3) the probable value of the additional or substitute procedural safeguards that are sought, weighed against the risk of erroneous deprivation of the affected interest if those safeguards are not provided. *Ake,* 470 U.S. at 77, 105 S.Ct. at 1093, citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

The *Ake* court characterized "[t]he private interest in the accuracy of a criminal proceeding that places an individual's life or *liberty* at risk" as "almost uniquely compel-

---

1. Citing as other examples of cases recognizing the "basic tools," *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (Indigent defendant is entitled to the effective assistance of counsel at trial and on his first direct appeal as of right); *Burns v. Ohio,* 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959) (State may not require indigent defendant to pay fee before filing notice of appeal); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (State must provide indigent defendant with trial transcript for appeal).

ling," and said that it "weighs heavily in our analysis." *Ake*, 470 U.S. at 77, 105 S.Ct. at 1093 (emphasis added). Next the Court considered the governmental interest affected by provision of the safeguard, and could identify only one interest weighing against recognition of the right—the fiscal burden on the State. The Court concluded that fiscal interest is "not substantial, in light of the compelling interest of both the State and the individual in accurate dispositions." *Id.* Finally, the Court inquired into the probable value of the psychiatric assistance sought, and the risk of an error in the proceeding if the assistance is not provided. The Court concluded that "when the State has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense." *Ake*, 470 U.S. at 82, 105 S.Ct. at 1095. After considering the relevant factors, the Court concluded that

> [w]hen the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent. It is in such cases that a defense may be devastated by the absence of a psychiatric examination and testimony; with such assistance, the defendant might have a reasonable chance of success. In such a circumstance, where the potential accuracy of the jury's determination is so dramatically enhanced, and where the interests of the individual and the State in an accurate proceeding are substantial, the State's interest in its fisc must yield.

*Id.*, 470 U.S. at 82–83, 105 S.Ct. at 1096. The Court emphasized, however, that an "indigent defendant [does not have] a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Id.*, 470 U.S. at 83, 105 S.Ct. at 1096.

We must first decide whether the rule announced in *Ake* should be applied at all in this non-capital case. Certainly, there is no explicit language in the *Ake* decision limiting its application to capital cases. Indeed, the *Ake* court identified the "uniquely compelling" private interest at stake as the "interest in the accuracy of a criminal proceeding that places an individual's life *or liberty* at risk. . . ." *Id.*, 470 U.S. at 78, 105 S.Ct. at 1093 (emphasis added); Note, *Expert Services and the Indigent Criminal Defendant: The Constitutional Mandate of Ake v. Oklahoma*, 84 Mich.L.Rev. 1326, 1343–44 (1986). However, Chief Justice Burger, in a brief concurring opinion, commented that "[n]othing in the Court's opinion reaches non-capital cases." *Ake*, 470 U.S. at 87, 105 S.Ct. at 1098.

This Court has never before specifically considered whether the rule announced in *Ake* applies in non-capital cases.[2] Nor has our intermediate court, the Court of Criminal Appeals, been required to definitively reach this issue. Instead, in those non-capital cases in which appointment of experts has been an issue, that court has concluded that the defendant failed to establish the threshold showing of "particularized necessity." The intermediate court, in two of those cases, expressed doubt, in dicta, about the rule's application in non-capital cases;[3] however, in its most recent case, *State v. Edwards*, 868 S.W.2d 682 (Tenn.Crim.App.1993), the Court of Criminal Appeals said that "[c]onstitutional due process . . . applies whether the death penalty is sought or not." *Id.* at 697.

Our research reveals that the majority of jurisdictions which have considered the issue agree with *Edwards* that constitutional due process applies in non-capital cases. *State v. Hoopii*, 68 Haw. 246, 710 P.2d 1193 (1985); *Palmer v. State*, 486 N.E.2d 477 (Ind.1985); *State v. Coker*, 412 N.W.2d 589 (Iowa 1987); *State v. Dunn*, 243 Kan. 414, 758 P.2d 718

---

**2.** The State asserts that in *State v. Cazes*, 875 S.W.2d 253, 261 (Tenn.1994), we limited *Ake*'s application to capital cases. There is nothing in that decision which supports the State's assertion. *Cazes* was a capital case. Therefore, we had no reason to discuss *Ake*'s application in the context of a non-capital case. As support of its assertion, the State is apparently relying on an

explanatory parenthetical following a citation to *Ake*. The parenthetical merely reflects that *Ake* was a capital case, nothing more or less.

**3.** *See State v. Harris*, 866 S.W.2d 583 (Tenn.Crim. App.1992); *State v. Lambert*, 741 S.W.2d 127 (Tenn.Crim.App.1987).

(1988); *Pertgen v. State,* 105 Nev. 282, 774 P.2d 429 (1989); *State v. Campbell,* 127 N.H. 112, 498 A.2d 330 (1985); *People v. Stone,* 195 Mich.App. 600, 491 N.W.2d 628 (1992); *Cowley v. Stricklin,* 929 F.2d 640 (11th Cir. 1991). Indeed, only one jurisdiction has concluded that *Ake* does not apply outside the capital case context. *Marlow v. State,* 538 So.2d 804 (Ala.Crim.App.1988).

■ We agree with the jurisdictions that have applied the *Ake* principle in the non-capital context because the due process principle of fundamental fairness requires that a State which prosecutes an indigent defendant assure that defendant of a fair opportunity to present his defense. It is axiomatic that fairness cannot exist where an indigent defendant is deprived by poverty of a meaningful opportunity to defend when his liberty is at stake. The due process principle of fundamental fairness applies to all criminal prosecutions, and does not rest upon the severity of the sanction sought or imposed.

### EX PARTE HEARING

The State next argues that even if *Ake* does apply, the defendant is not entitled to an *ex parte* hearing. We disagree.

It is true that as a general proposition, *ex parte* hearings are disallowed. Indeed, in Tennessee, a judge is prohibited "except as authorized by law," from considering "ex parte or other communications concerning a pending or impending proceeding." Tenn. Sup.Ct.R. 10, Canon 3(A)(4). This is a result of the Due Process guarantee of notice and an opportunity to be heard that is found in both the Fourteenth Amendment to the federal Constitution and Article I, § 8 of the Tennessee Constitution. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *State v. Pearson,* 858 S.W.2d 879 (Tenn.1993). Thus, the issue in this case is whether an *ex parte* hearing is authorized or required by the federal constitution in the context of requests by indigent defendants for state-funded psychiatric expert assistance.

Our reading of *Ake* convinces us that an *ex parte* hearing is required. There, the United States Supreme Court stated that once a defendant has made "an **ex parte** threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent." *Id.,* 470 U.S. at 83, 105 S.Ct. at 1097 (emphasis added).

The logic of requiring an *ex parte* hearing under such circumstances is apparent. Indigent defendants who must seek state-funding to hire a psychiatric expert should not be required to reveal their theory of defense when their more affluent counterparts, with funds to hire experts, are not required to reveal their theory of defense, or the identity of experts who are consulted, but who may not, or do not, testify at trial.

As the North Carolina Supreme Court recognized when considering this issue, the object of scrutiny involved in determining an indigent defendant's right to a psychiatric expert "is not mere physical evidence, but the defendant himself. The matter is not tactile and objective, but one of an intensely sensitive, personal nature. The public, adversarial nature of an open hearing is inevitably intimidating ... and can daunt the defendant's desire to put before the trial court all his evidence in support of his motion." *State v. Ballard,* 333 N.C. 515, 428 S.E.2d 178, 180–81 (1993).[4] "To expose to the State testimony and evidence supporting a defendant's request for an independent psychological evaluation and a psychiatrist's trial assistance lays bare his insanity or related defense strategy." *Id.* In concluding that an *ex parte* hearing is required, the North Carolina Supreme Court described the importance of the rule as follows:

> A hearing out of the presence of the prosecutor protects the defendant's insanity or diminished capacity defense strategy and enables him to put forward his best evi-

---

**4.** We note that the North Carolina Supreme Court has not required *ex parte* hearings when an indigent defendant requests a non-psychiatric expert. *See State v. White,* 340 N.C. 264, 457 S.E.2d 841 (1995); *State v. Ballard,* 428 S.E.2d at 180 (discussing the distinction); *State v. Phipps,* 331 N.C. 427, 418 S.E.2d 178 (1992). We express no opinion on that issue, which is not presented in this case. *See* note 7, *infra.*

dence in support of a motion that, if granted, might give him a reasonable chance of success, but if denied could devastate his defense. Only in the relative freedom of a non-adversarial atmosphere can the defense drop inhibitions regarding its strategies and put before the trial court all available evidence of a need for psychiatric assistance. Only in such an atmosphere can the defendant's privilege against self-incrimination and his right to the effective assistance of counsel not be subject to potential violation by the presence of the State.

*Id.,* 428 S.E.2d at 180.

■ We agree with the North Carolina Supreme Court and conclude that, at least in the context of a request for a psychiatric expert, an *ex parte* hearing is required. *See also Brooks v. State,* 259 Ga. 562, 385 S.E.2d 81 (1989) (Hearings must be *ex parte,* but State must be given notice of the filing of the motion and may submit a brief in opposition to the request for funding); *McGregor v. State,* 733 P.2d 416 (Okla.Crim.App.1987) (*Ake* requires *ex parte* hearings); *Cf. Arnold v. Higa,* 61 Haw. 203, 600 P.2d 1383 (1979) (Pre–*Ake* case which holds that a defendant is entitled to an *ex parte* hearing upon request); *State v. Touchet,* 642 So.2d 1213 (La. 1994) (Indigent defendant must be afforded an *ex parte* hearing if the trial court determines that the defendant would be prejudiced by disclosure of his defense at an adversarial hearing); *People v. Loyer,* 169 Mich.App. 105, 425 N.W.2d 714 (1988) (Statute declared unconstitutional which required indigent defendants to disclose the names, addresses, and expected testimony of witnesses in the presence of the prosecution in order to obtain payment for service of process and witness fees); *State v. Peeples,* 94 Ohio App.3d 34, 640 N.E.2d 208 (1994) (*Ex parte* hearing may be necessary at times to protect defense strategy); *Contra, State v. Apelt,* 176 Ariz. 349, 861 P.2d 634 (1993); *State v. Floody,* 481 N.W.2d 242 (S.D.1992).

The dissent argues that the logic of requiring an *ex parte* hearing is flawed because Tenn.R.Crim.P. 12.2 requires that all Tennessee defendants, both indigent and non-indigent, give pre-trial notice of their intent to rely on the insanity defense, as well as notice of their intent to introduce expert testimony relating to mental condition. The dissent concludes that because "under Tennessee law a non-indigent defendant does not have any greater ability to maintain the confidentiality of his or her defense of insanity than a defendant without resources, *ex parte* hearings are not justified."

The dissent's conclusion overlooks the significant difference in the disclosure requirements between the pre-trial notice required by Tenn.R.Crim.P. 12.2, and the threshold showing of particularized need required to establish entitlement to funds for psychiatric expert assistance. To establish particularized necessity, the defendant will, no doubt, be required to reveal specific facts and circumstances giving rise to the *potential* insanity defense. Such revelations are not required by the pre-trial notice. In addition, the identity of the expert will be revealed before the expert evaluates the defendant and before the defense determines whether or not it will rely upon the insanity defense. Neither Tenn.R.Crim.P. 12.2, nor Tenn. R.Crim.P. 16(b), require disclosure of the identity of experts who are consulted, but who are not called to testify.

If *ex parte* hearings are not required, indigent defendants would, in effect, be penalized for requesting psychiatric expert assistance by being required to disclose that information, and may be deterred from seeking it because of the breadth of disclosure required.

Accordingly, we disagree with the dissent's conclusion that Rule 12.2, requiring all defendants to provide pre-trial notice of their intent to rely on the insanity defense, is dispositive of this issue.[5] We conclude, instead, that an *ex parte* hearing is required when an

---

5. Indeed only the Arizona Supreme Court in *State v. Apelt, supra,* considered the pre-trial notice requirement relevant to the issue. The other state courts considering the question of an indigent defendant's right to an *ex parte* hearing did not mention the pre-trial notice requirement,

though other states in which the issue has been considered have such a notice requirement. *See* Ga.Unif.Sup.Ct.R. 31; La.Code Crim.Proc.Ann. art. 726; Mich.Comp.Laws § 768.20a; N.C.Stat. Ann. § 15A–959; Okla.Stat.Ann. tit. 22, § 1176.

indigent defendant, in a written sealed motion to the trial court alleges particular facts and circumstances that raise the question of the defendant's sanity. As to form, the motion should conform to Tenn.Sup.Ct. Rule 13 § (2)(B)(10). A bare allegation that sanity will be a significant factor at trial is not sufficient. An *ex parte* hearing, in which the defendant is afforded an opportunity to establish particularized need, should be granted if these procedural criteria are satisfied.

■ Having concluded that an *ex parte* hearing is required when certain procedural criteria are satisfied, we must next consider the showing required to trigger the State's federal constitutional obligation,[6] to provide the defendant access to an independent competent psychiatrist "who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id.*[7]

### "PARTICULARIZED NECESSITY"

In *Ake*, the U.S. Supreme Court determined that the defendant's sanity at the time of the offense must be a significant factor at trial to trigger due process protections. We must now consider the threshold showing which an indigent defendant must establish in order to obtain appointment of a psychiatric expert. This Court has previously construed Tenn.Code Ann. § 40–14–207(b) (1990 & Supp.1994), the statute which requires the furnishing of state-funded experts in capital cases, as mandating a showing of particularized need.

For example, we have said that "[t]he courts have uniformly held that the right to assistance of state paid experts exists only upon a showing of a particularized need. The defendant must show that a substantial

need exists *requiring* the assistance of state paid supporting services and that his defense cannot be fully developed without such professional assistance." *State v. Evans*, 838 S.W.2d 185, 192 (Tenn.1992) (emphasis added). More recently, we have found no abuse of discretion in denying state-paid expert service when the request "was accompanied by little more than undeveloped assertions that the services were needed to attempt to counter the State's proof." *State v. Cazes*, 875 S.W.2d 253, 261 (Tenn.1994).

Other state courts have also discussed the threshold showing required. For example, the North Carolina Supreme Court has, in several cases, more fully developed what is required to establish the constitutional right to appointment of an expert. That court has said that:

> In order to make a threshold showing of specific need for the expert sought, the defendant must demonstrate that: (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that it will materially assist him in the preparation of his case.

*State v. Moore*, 321 N.C. 327, 364 S.E.2d 648, 652 (1988) (citations omitted).

Later, the same court noted that "[m]ere hope or suspicion that favorable evidence is available is not enough to require that such help be provided." *State v. Mills*, 332 N.C. 392, 420 S.E.2d 114, 117 (1992). In general, a defendant must demonstrate, by reference to the facts and circumstances of his particular case, that appointment of a psychiatric expert is necessary to insure a fair trial. *State v. Campbell*, 127 N.H. 112, 498 A.2d 330, 332 (1985).

The North Carolina Supreme Court recognizes that trial courts must be given latitude

---

6. Because resolution of the issues in this case clearly are governed by the Due Process Clause of the federal constitution, we need not at this time consider the protection afforded by Art. I, § 8 of the Tennessee Constitution. Of course, as the court of last resort in interpreting the Tennessee Constitution, we are "always free to expand the minimum level of protection mandated by the federal constitution." *Tennessee Small School Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993), quoting *Doe v. Norris*, 751 S.W.2d 834, 838 (Tenn.1988).

7. We note that the expert assistance requested in this case was the same as that requested in *Ake*. The question of whether due process requires provision of non-psychiatric experts has not been resolved by the United States Supreme Court. Indeed, in *Caldwell v. Mississippi*, 472 U.S. 320, 324, n. 1, 105 S.Ct. 2633, 2637, n. 1, 86 L.Ed.2d 231 (1985), the Court explicitly declined to rule on that issue. We likewise express no opinion on the merits of that issue since its resolution is not necessary to the decision in this case.

when applying the test, by commenting that the "particularized showing demanded ... is a flexible one and must be determined on a case-by-case basis," and that the trial court "should consider all the facts and circumstances known to it at the time the motion for [expert] assistance is made." *Mills,* 420 S.E.2d at 117–18.

We approve of and adopt the principles developed by the North Carolina Supreme Court, as well as those enunciated in our prior cases interpreting our statute requiring the furnishing of state-funded experts.

■ Accordingly, before an indigent defendant is entitled to the assistance of a state-funded psychiatric expert, the defendant must make a threshold showing of particularized need. To establish particularized need, the defendant must show that a psychiatric expert is necessary to protect his right to a fair trial. Unsupported assertions that a psychiatric expert is necessary to counter the State's proof are not sufficient. The defendant must demonstrate by reference to the facts and circumstances of his particular case that appointment of a psychiatric expert is necessary to insure a fair trial. Whether or not a defendant has made the threshold showing is to be determined on a case-by-case basis, and in determining whether a particularized need has been established, a trial court should consider all facts and circumstances known to it at the time the motion for expert assistance is made. Finally, we emphasize that *Ake,* in our view, does not require the appointment of a psychiatrist who will reach conclusions that the defendant wishes. What is important is that the defendant have access to, and the assistance of, a competent, independent psychiatric expert when he has made the threshold showing of particularized necessity. *Dunn v. State,* 291 Ark. 131, 722 S.W.2d 595 (1987); *State v. Williams,* 603 S.W.2d 562 (Mo.1980); *State v. Indvik,* 382 N.W.2d 623 (N.D.1986); *People v. Stone,* 195 Mich.App. 600, 491 N.W.2d 628, 631 (1992); *Ake v. State,* 778 P.2d 460 (Okla. Crim.App.1989); Michael J. Jaworshky, Annotation: *Right of Indigent Defendant in State Criminal Case to Assistance of Psychiatrist or Psychologist,* 85 A.L.R.4th 19 (1991).

■ Applying the foregoing principles to the facts of this case, we conclude that the trial court did not abuse its discretion in denying the defendant's request for appointment of a psychiatric expert. In this case, the defendant failed to make the required threshold showing of particularized need for the psychiatric expert he sought. Although the defendant's mental condition was an issue at trial, the expert he sought was not necessary to insure his right to a fair trial. The CT scan was performed and no abnormalities were revealed. All the facts and circumstances taken together demonstrate that further testing was being sought in the "mere hope or suspicion" that favorable evidence could be obtained. Indeed, defense counsel stated to the trial court that he was aware that the results of the testing might only affect defendant's mental ability, and might not "mean that he was insane." Accordingly, the trial court did not abuse its discretion in denying the defendant's motion.

## CONCLUSION

We conclude that when a defendant in a non-capital case demonstrates to the trial court in an *ex parte* proceeding that his sanity at the time of the offense is to be a significant factor at trial, the federal constitution, at a minimum, requires the State to provide the defendant access to a competent, independent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. Because in this case, the defendant failed to make the required threshold showing of "particularized need," we affirm the judgment of the Court of Criminal Appeals. Costs of this appeal are taxed to the defendant, Joseph Barnett.

REID and WHITE, JJ., and WADE, Special Justice, concur.

DROWOTA, J., see separate concurring and dissenting opinion.

DROWOTA, Justice, concurring and dissenting.

The majority concludes that, pursuant to *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct.

1087, 84 L.Ed.2d 53 (1985), the due process clause of the Fourteenth Amendment to the federal constitution requires that the State provide an independent psychiatric expert to an indigent criminal defendant if that defendant is able to show a "particularized need" for the assistance of the expert. Because I agree with the majority that the principles enunciated in *Ake*—a capital case—are equally applicable to non-capital cases, I fully concur with this conclusion. However, I cannot agree with the majority's corollary holding—that the due process clause, as construed in *Ake*, also requires that the defendant be afforded an *ex parte* hearing in which to present evidence of the need for a state-funded psychiatric expert.

The majority supports this latter conclusion by reasoning as follows:

> The logic of requiring an *ex parte* hearing under such circumstances is apparent. Indigent defendants who must seek state funding to hire a psychiatric expert should not be required to reveal their theory of defense when their more affluent counterparts, with funds to hire experts, are not required to reveal their theory of defense, or the identity of experts who are consulted, but who may not, or do not, testify at trial.

909 S.W.2d at 428.

Initially, I concede that some language in *Ake* could lead one to assume that an *ex parte* hearing is required as a matter of federal constitutional law. For example, the *Ake* court states that "[w]hen the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor is his defense, the need for the assistance of a psychiatrist is readily apparent." *Ake*, 470 U.S. at 83, 105 S.Ct. at 1097. Moreover, the *Ake* court alluded to the specific interest apparently protected by *ex parte* proceedings by stating that:

> The State's interest in prevailing at trial—unlike that of a private litigant—is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases. Thus, also unlike a private litigant, a State may not legitimately assert an interest in maintenance of a strategic advantage over the defense, if the result of that advantage is to cast a pall on the accuracy of the verdict obtained.

*Ake*, 470 U.S. at 79, 105 S.Ct. at 1095.

Therefore, certain language in *Ake* appears to support, at least indirectly, the rationale espoused by the majority: that all criminal defendants have a legitimate interest in maintaining a strategic advantage over the State; that keeping the theory of defense hidden from the State is an acceptable means of realizing this interest; and, finally, that requiring an *ex parte* hearing for an indigent defendant protects this interest by putting such a defendant on the same footing as the non-indigent defendant, who does not have to reveal his or her theory of defense.

This rationale, though plausible at first glance, is actually flawed in a basic sense. The flaw lies in the fact that any criminal defendant, whether indigent or not, is required under Tennessee law to provide notice to the State if the insanity defense is to be raised at trial. Rule 12.2 of the Tennessee Rules of Criminal Procedure provides, in part, that:

> (a) **Defense of Insanity.** If a defendant intends to rely upon the defense of insanity at the time of the alleged crime, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the district attorney general in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this subdivision, insanity may not be raised as a defense. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

> (b) **Expert Testimony of Defendant's Mental Condition.** If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of his or her guilt, the defendant shall, within the time provided for the filing of the pretrial motions or at such later time as the court may direct, notify the district attorney in writing of such inten-

tion and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

Rule 12.2 clearly requires disclosure by *all* defendants seeking to rely upon a defense of insanity—regardless of their financial status—before the case goes to trial. This rule is designed to promote fairness in criminal litigation, for the Rules Committee explicitly stated in regard to subsection (b) "that lack of notice about the defendant's mental state may seriously disadvantage the district attorney in preparing rebuttal proof." [1] The rule is thus a conscious departure from one of the usual fundamentals of criminal litigation—the defendant's entitlement to keep his or her theory of defense concealed from the State. Therefore, since under Tennessee law a nonindigent defendant does not have any greater ability to maintain the confidentiality of his or her defense of insanity than a defendant without resources, the majority's proposed justification for the *ex parte* requirement loses much of its force. Indeed, this very fallacy was noted by the Arizona Supreme Court in *State v. Apelt*, 176 Ariz. 349, 364–65, 861 P.2d 634, 649–50 (1993), a case in which the court, after citing the broad disclosure requirements placed on a criminal defendant by Arizona law, rejected the defendant's argument that he had a constitutional right to an *ex parte* hearing. *See also Ramdass v. Commonwealth*, 246 Va. 413, 437 S.E.2d 566 (1993) (no state or federal constitutional right to an *ex parte* hearing); *State v. Floody*, 481 N.W.2d 242 (S.D.1992) (due process not violated by State's presence at hearing in which defendant requested expert assistance); *Clark v. Dugger*, 834 F.2d 1561 (11th Cir. 1987) ("trial judge under no constitutional duty to grant defendant's request for a psychiatric expert to report confidentially to his counsel").[2]

The majority, however, objects to this conclusion, stating that:

> The dissent's conclusion overlooks the significant difference in the disclosure requirements between the pre-trial notice required by Tenn.R.Crim.P. 12.2, and the threshold showing of particularized need required to establish entitlement to funds for psychiatric expert assistance. To establish particularized necessity, the defendant will, no doubt, be required to reveal specific facts and circumstances giving rise to the *potential* insanity defense. Such revelations are not required by pre-trial notice. In addition, the identity of the expert will be revealed before the expert evaluates the defendant and before the defense determines whether or not it will rely upon the insanity defense. Neither Tenn.R.Crim.P. 12.2, nor Tenn.R.Crim.P. 16(b), require disclosure of the identity of experts who are consulted, but who are not called to testify.
>
> Under the analysis of the dissent, indigent defendants would, in effect, be penalized for requesting psychiatric expert assistance by being required to disclose that information, and may be deterred from seeking it because of the breadth of disclosure required.

909 S.W.2d 429–430 (emphasis in original).

The majority thus draws a sharp distinction between the threshold hearing and Rule 12.2, arguing that the first necessarily involves a full disclosure of the details of a potential insanity defense, whereas the latter merely requires disclosure of certain basic facts—namely, that the insanity defense will be relied upon and that expert testimony will be introduced. In my opinion, this distinction is untenable, as the majority substantially understates the nature and extent of the disclosure contemplated by Rule 12.2. In addition to the above-quoted sections, subsection (c) of that rule provides:

---

1. *See* "Comment to 1984 Amendment" to Rule 12.2. Moreover, this burden of disclosure lies squarely on the defendant; it does not require a "triggering request from the State." *See* Committee Comment to rule 12.2.

2. The North Carolina Supreme Court has recently concluded, however, that indigent defendants are entitled, as a matter of federal constitutional law, to an *ex parte* hearing for the purpose of determining their need for state-funded psychiatric assistance. *State v. Ballard*, 333 N.C. 515, 428 S.E.2d 178 (1993).

**Mental Examination of Defendant.** In an appropriate case the court may, upon motion of the district attorney, order the defendant to submit to a mental examination by a psychiatrist or other expert designated for this purpose in the order of the court. No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except for impeachment purposes or on an issue respecting mental condition on which the defendant has introduced testimony.

Thus, in any case in which the mental condition of the defendant reasonably appears to be an issue, the State may have the defendant examined by a mental health expert. In order to be meaningful, this examination must inevitably delve into "specific facts and circumstances giving rise to the potential insanity defense." Although it may not use the results of the examination as substantive evidence if the defendant chooses not to raise an insanity defense at trial, the State is nevertheless authorized to explore the details of a defendant's potential insanity defense before trial—whether the defendant is indigent or not. Because Rule 12.2 effectively requires the defendant to disclose as much information as does the threshold hearing, and because the majority does not suggest that the rule is unconstitutional, I cannot agree that indigent defendants are penalized in a constitutional sense by having to request psychiatric assistance in the presence of the State.[3]

Because I do not believe that an *ex parte* hearing in this context is one of the "basic tools of an adequate defense or appeal," *Britt*

*v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971),[4] I respectfully dissent from the majority on this issue.

---

**3.** The only plausible advantage to the defendant of *ex parte* threshold hearings in this context is that the defendant is able to keep secret the identity of experts consulted, but who do not testify at trial. While I agree that this may be an advantage in some cases, I do not think that it is so important as to be of constitutional dimension.

**4.** Indeed, it is probable that the *Ake* court's usage of the *ex parte* language is nothing more than a

reflection of the fact that federal law provides that hearings for the appointment of experts for indigent defendants are to be conducted *ex parte*. 18 U.S.C. § 3006A(e)(1). As this precise constitutional issue was not before the Court, however, it is impossible to deduce from the court's mere invocation of the language that it intended that an *ex parte* hearing be part of the *Ake* rule.