# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JUNE 1999 SESSION

FILED

July 19, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **NO. 01C01-9801-CC-00026** |
| Appellee, | ) | |
| | ) | **MONTGOMERY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JOHN H. GASAWAY,** |
| **TIMOTHY ACKLIN,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Aggravated Rape; |
| | ) | Aggravated Robbery) |

**FOR THE APPELLANT:**

**MICHAEL R. JONES**
District Public Defender

**RUSSEL A. CHURCH**
Assistant District Public Defender
109 S. Second St.
Clarksville, TN 37040

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**KIM R. HELPER**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**JOHN WESLEY CARNEY, JR.**
District Attorney General

**ARTHUR F. BIEBER**
Assistant District Attorney General
204 Franklin St., Suite 200
Clarksville, TN 37040-3420

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

## O P I N I O N

The defendant, Timothy Acklin, was convicted by a Montgomery County jury of aggravated rape and aggravated robbery. The trial court sentenced him as a Range I standard offender to twenty-one years for aggravated rape and nine years for aggravated robbery. The sentences were ordered to run consecutively. In this appeal as of right, the defendant raises two issues:

> 1. whether he is entitled to a new trial in order to obtain a DNA expert; and
>
> 2. whether the trial court erred in ordering his sentences to run consecutively.

Upon our review of the record, we **AFFIRM** the judgment of the trial court.

## FACTS

The victim arrived home after dark on January 23, 1995. She entered the back of her apartment and then went out the front door to check her mail. She heard footsteps coming down her walk and saw a man she did not know coming at her. She screamed and tried to return into her home, but the man grabbed her. He then forced her inside and pushed her against a wall. He slapped her face, knocking off her eyeglasses.

The attacker demanded money and her ATM card. The victim told him she had only $10 and no ATM card. The attacker said, "I can't believe I came to Clarksville for twenty f - - - ing dollars," and slammed her into a wall. He then pushed her onto the floor and straddled her waist with his knees. He pulled out a pistol, pointed it at her head, and told her, "it was [her] night to die, bitch." The victim pled for her life, and the attacker hit her in the head and face with the gun.

At some point, the attacker said, "you saw my f - - - ing face," and put on, in the victim's words, a "black nylon looking thing" as a mask. He also pulled the

2

victim's overcoat (which she was wearing) over her head and turned off the floor lamp. The attacker then pulled down the victim's pants and underwear and raped her.

Subsequently, the attacker pulled the victim up and told her to get the money. He pushed the gun into her back and followed her into the kitchen. She reached her purse, took out the money and handed it to him. He then pulled her into the bedroom, put the gun to her head, and told her to lay on the floor and count to one hundred. As she did so, he left.

After the victim finished counting, she called her best friend, who called 911. The victim was taken to the local hospital where vaginal swabs were collected.

The victim told the police that her attacker wore a camouflage field jacket, black jeans and sneakers. She described him as a tall African-American in his mid-twenties, with big eyes, no facial hair, and medium build. She also told the police about her attacker's mask and gun.

Four days later, Officer Rodd Watters was on patrol in Clarksville and saw defendant, who fit the attacker's physical description[1] and was wearing a camouflage field jacket and blue jeans. Officer Watters stopped defendant and asked him for identification. Defendant said he did not have any identification but provided a nearby address. Watters frisked defendant and found a pistol and a nylon mesh rag commonly worn on the head.

At trial, the victim testified she could not identify her attacker because her glasses had been knocked off during the attack. When shown the pistol and mesh rag taken from defendant, she testified that she could not be certain they were the

---

[1]Defendant described himself to police as six feet, two inches tall; one hundred eighty pounds; and twenty-one years old.

ones her attacker used. She did testify that defendant's camouflage field jacket was the type worn by her attacker.

Dr. William Driver Shippen, Jr. examined the victim after her attack and found tender areas to her scalp and bruising to her nose. The victim also had bruising on her left hand and lacerations on the inside of her lip. Dr. Shippen found sperm in the victim's vaginal secretions.

Margaret Bash testified as an expert in the field of analysis and comparison of DNA samples. She tested the DNA contained in the sperm sample obtained from the victim's vaginal secretions and the DNA contained in a blood sample taken from defendant. According to her testing procedures, these samples matched. She testified that only one in ninety-eight million African-Americans would have this particular DNA profile.

## I. DNA EXPERT

In his first issue, defendant contends that he should have been granted a new trial based on this Court's post-trial holding that a defendant may be entitled to the appointment of a DNA expert upon a showing of particularized need. *See* State v. James W. Jacobs, No. 01C01-9601-CC-00048, Montgomery County (Tenn. Crim. App. filed September 18, 1997, at Nashville). This Court's decision in Jacobs was an extension of our Supreme Court's decision in State v. Barnett, 909 S.W.2d 423 (Tenn. 1995). In Barnett, our Supreme Court determined that an indigent defendant relying on a psychiatric defense was entitled to the assistance of a state-funded psychiatric expert upon a threshold showing of "particularized need." *Id.* at 431. The Court stated,

> To establish particularized need, the defendant must show that a psychiatric expert is necessary to protect his right to a fair trial. Unsupported assertions that a psychiatric expert is necessary to counter the State's proof are not sufficient. The defendant must demonstrate by reference to the facts and

4

circumstances of his particular case that appointment of a psychiatric expert is necessary to insure a fair trial. Whether or not a defendant has made the threshold showing is to be determined on a case-by-case basis, and in determining whether a particularized need has been established, a trial court should consider all facts and circumstances known to it at the time the motion for expert assistance is made.

*Id.*

In Jacobs, after determining that the reasoning of Barnett should extend to an indigent defendant's request for a DNA expert, this Court considered the defendant's contention that, because the State intended to introduce DNA evidence, he required his own DNA expert to verify the results. Finding that this assertion did not demonstrate the required particularized need, this Court held that the trial court did not abuse its discretion in denying the defendant's request. *See also* State v. Quinton Cage, No. 01C01-9605-CC-00179, Montgomery County (Tenn. Crim. App. filed January 26, 1999, at Nashville) (defendant who requested DNA expert to counter State's expert on grounds that he would otherwise not be able to present a meaningful defense did not satisfy the requirement of particularized need).

In the instant case, there was no pre-trial request for a DNA expert. The issue of whether defendant should be provided funds to hire a DNA expert was not raised until the motion for new trial. A motion for new trial is generally made to give the trial court an opportunity to correct errors that occurred during the trial. Ricks v. State, 882 S.W.2d 387, 393 (Tenn. Crim. App. 1994). Here defendant was asking the trial court to correct the failure to file a pre-trial motion.

Defendant's effort was akin to urging the trial court to grant a new trial on the basis of newly discovered evidence. New trials may be granted on such grounds when a defendant establishes reasonable diligence in attempting to discover the evidence; the materiality of the evidence; and that the evidence would likely change the result of the trial. State v. Caldwell, 977 S.W.2d 110, 116 (Tenn. Crim. App. 1997). Here, however, defendant made no showing that he had a "particularized

5

need" to hire a DNA expert. Absent such a showing, defendant is not entitled to state funds for such an expert. Accordingly, the trial court properly denied defendant's motion for new trial.

This issue is without merit.

## II. SENTENCING

Defendant next challenges the trial court's decision to run his sentences consecutively. However, the record on appeal does not contain a transcript of the sentencing hearing. Because the record does not contain a transcript of the proceedings relevant to the issue presented for review, this Court is precluded from considering the issue. State v. Ballard, 855 S.W.2d 557, 561 (Tenn. 1993). Accordingly, this issue is waived.

The judgment of the trial court is **AFFIRMED**.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOSEPH M. TIPTON, JUDGE**

_____
**ALAN E. GLENN, JUDGE**