FILED
10/01/2021
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 5, 2020 Session

## STATE OF TENNESSEE v. SHAUGHN WALKER

**Appeal from the Criminal Court for Shelby County**
**No. 17-02244      J. Robert Carter, Jr., Judge**

_____

## No. W2019-00751-CCA-R3-CD
_____

CAMILLE R. McMULLEN, J., dissenting.

I respectfully disagree with the majority's conclusion that the trial court did not err in refusing to grant a continuance and additional funding for an eyewitness identification expert. This case rested almost entirely on the victim's identification of the Defendant as the perpetrator. Upon being notified by defense counsel the first day of trial that Dr. David Ross would not testify unless additional funds were provided, the trial court was understandably frustrated and concerned about further delay in this case. However, for the reasons that follow, I do not believe the trial court's concerns about delay and expense warranted the severity of the sanction imposed on the Defendant. Because this case hinged on the victim's identification and because the Defendant had already demonstrated a "particularized need" for state-funded expert assistance in the field of eyewitness identification, I believe the trial court erred in not granting a continuance and additional funds for a new expert. At the very least, I believe the trial court erred in not allowing testimony in some form from Dr. Jeffrey Neuschatz, who was available if the trial court had simply granted a one-day continuance. Because these errors were not harmless beyond a reasonable doubt, I would reverse the Defendant's conviction and remand for a new trial.

On the issue of whether it was appropriate for the trial court to grant a continuance and approve additional funds for a new expert, the record shows that the Defendant was not to blame for Dr. Ross's refusal to testify at trial. See Ake v. Oklahoma, 470 U.S. 68, 79 (1985) (concluding that the State's fiscal interest in denying a state-funded psychiatrist was "not substantial, in light of the compelling interest of both the State and the individual in accurate dispositions."). The record shows that Dr. Ross's conduct, which the trial court accurately characterized as an attempt to "shak[e] this system down for money," was unconscionable and, in my view, should have resulted in a finding of contempt against him. While I wholeheartedly agree that Dr. Ross should not have been given any more money

-1-

in this case, I believe that providing additional funds for a new eyewitness identification expert would have ensured that the Defendant's due process rights were adequately protected.

In this case, there was no question that the Defendant made the threshold showing of a "particularized need" for an eyewitness identification expert, as the trial court twice held in orders that: (1) "[t]he services of an expert in the field of eyewitness identification are necessary to ensure the protection of the Defendant's constitutional rights, and payments or reimbursements for such services are reasonable and necessary expenses under the Sixth and Fourteenth Amendments to the United States Constitution and Article I §§ 8, 9, and 16 of the Tennessee Constitution[,]" and (2) "[t]here is a particularized need in this case for an expert in the field of eyewitness identification to assess the quality of the identification made in this case, as well as to educate the jury to that effect." See State v. Scott, 33 S.W.3d 746, 753-55 (Tenn. 2000) (applying the Barnett test in concluding that the indigent defendant demonstrated a "particularized need" for state-funded expert assistance in the field of DNA analysis); State v. Barnett, 909 S.W.2d 423, 430-31 (Tenn. 1995) (outlining a two-prong test for determining whether a defendant has made the threshold showing of "particularized need" for a state-funded psychiatric expert). Because the Defendant clearly made this threshold showing of "particularized need," the trial court's denial of expert assistance, in refusing to grant a continuance and additional funds for a new expert, violated the Defendant's due process right to present a defense. Scott, 33 S.W.3d at 753 n.3 ("When a defendant can make this threshold showing [of "particularized need"], a trial court's denial of expert assistance is clearly a denial of due process of law[.]); see Barnett, 909 S.W.2d at 428 (reiterating that "the due process principle of fundamental fairness requires that a State which prosecutes an indigent defendant assure that defendant of a fair opportunity to present his defense" and that "fairness cannot exist where an indigent defendant is deprived by poverty of a meaningful opportunity to defend when his liberty is at stake."); Ake, 470 U.S. at 77 (concluding that indigent defendants are entitled to the "'basic tools of an adequate defense or appeal'" (quoting Britt v. North Carolina, 404 U.S. 226, 227 (1971)).

In Scott, the Tennessee Supreme Court held that the failure to provide an indigent defendant with needed expert assistance amounted to a denial of due process of law. Scott, 33 S.W.3d at 755. The court also held that it was appropriate in such cases to apply the constitutional harmless error standard, namely "whether the error complained of was harmless beyond a reasonable doubt." Id. After reviewing the record in this case, I am "unable to conclude beyond a reasonable doubt that the improper denial of expert assistance had no appreciable effect upon the outcome of the [Defendant's] trial." Id. Aside from the victim's identification, which was problematic at best, the State's case consisted of purely circumstantial proof that the Defendant, who matched the victim's somewhat scant description of the perpetrator, was arrested at a gas station near the intersection where the victim's car had been abandoned. Because the victim's identification was fundamental to the State's case, an expert's assistance regarding the

inherent unreliability of eyewitness identifications "could very well have made a difference in the preparation and presentation of the [Defendant's] case or otherwise given rise to reasonable doubt in the minds of the jurors." Id. Because the record shows that the trial court's failure to provide this expert assistance was not harmless beyond a reasonable doubt, I would reverse the Defendant's conviction and remand for a new trial.

 

 

_____
CAMILLE R. McMULLEN, JUDGE