IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
MAY 2000 SESSION

## JACK LAYNE BENSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 8081  Charles Lee, Judge**

---

**No. M1999-01649-CCA-R3-PC - Filed August 2, 2000**

---

The petitioner, Jack Layne Benson, appeals the trial court's dismissal of his petition for post-conviction relief. Convicted in 1996 of first degree felony murder and especially aggravated robbery, and sentenced to consecutive terms of life and 24 years, the petitioner contended that he was entitled to post-conviction relief on the grounds that he was denied the effective assistance of counsel at trial and on direct appeal. In this appeal, the petitioner argues that trial counsel was ineffective for failing to adequately communicate, for failing to adequately investigate, and for failing to obtain a transcript of the preliminary hearing. The petitioner argues that his appellate counsel was ineffective for failing to present additional issues on direct appeal. Because the petitioner has been unable to establish both deficiency in the performance of his counsel and prejudice in consequence thereof, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

N. Andy Myrick, Jr., Fayetteville, Tennessee, for the appellant, Jack Layne Benson.

Paul G. Summers, Attorney General & Reporter, Marvin E. Clements, Jr., Assistant Attorney General, and Robert G. Crigler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The pertinent facts in this case appear in the opinion of this court on direct appeal:

> On January 10, 1996, the defendant and the victim, Jody Butts, visited in the home of Mitchell Sturdevant. At approximately 11:25 P.M., the victim announced that he intended to leave and the defendant asked for a ride. The two men left the Sturdevant residence together and, only a few minutes later, the body of the victim was

found lying in the street in front of the defendant's residence.

At 11:38 P.M., Officer Don Barber . . . was responding to a radio dispatch when he discovered the body in the street. Medical testimony established that the victim died as a result of three stab wounds. Either of two of the stab wounds, one to the heart and one the lung, would have been fatal.

Between 11:30 and 11:40 P.M., Donna Addison noticed dark spots on the front of the defendant's jacket and saw the defendant drop some money which appeared to be stained with blood. He also informed her that he could not give her a ride to the store because he was driving someone else's vehicle. Ms. Addison described the vehicle that the defendant was driving as a cream and red colored Chevrolet Blazer with tinted windows, a description that matched that of the vehicle the victim was driving at the time he left the Sturdevant residence.

Less than thirty minutes later, Calvin Harris observed the defendant driving the Blazer, a car he had never seen the defendant drive at anytime before. When Harris asked where the defendant had acquired the Blazer, the defendant simply laughed. The defendant agreed to drive Harris to a motel, where police made the arrest. The vehicle in the defendant's possession was identified as that owned by the victim. The glove compartment and the center console had been ransacked and part of the console had been broken. Police found blood on the driver's side door of the vehicle. Several items belonging to the victim, including items of identification, were found scattered in the rear of the Chevrolet Blazer. Police found the defendant in possession of the key to the Blazer. A piece of the broken console and $11.00 in bills and coins, splattered with human blood, were found in his right front pocket.

State v. Jack Layne Benson, No. 01C01-9707-CC-00283 (Tenn. Crim. App., at Nashville, Aug. 25, 1998), slip op. at 2-3. The single issue presented on direct appeal was whether the trial court had erred by ordering consecutive sentences. This court found no error. Id. at 7. Our supreme court denied application for permission to appeal on March 15, 1999.

There is a constitutional right to the effective assistance of counsel at all critical stages of a criminal prosecution. Tenn. Const. art. I, § 9; Powell v. Alabama, 287 U.S. 45 (1932). In order for the petitioner to be granted relief on grounds of ineffective counsel, he must establish that the advice given or the services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for his counsel's deficient performance, the result of his trial would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Baxter v. Rose, 523 S.W.2d 930

-2-

(Tenn. 1975).

Under the terms of the Post-Conviction Procedure Act, a petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). The credibility of the witnesses and the weight and value afforded to their testimony are appropriately addressed in the trial court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). On appeal, the burden is on the petitioner to establish that the evidence preponderated against the findings of the trial judge. Clenny v. State, 576 S.W.2d 12 (Tenn. Crim. App. 1978). Otherwise, the findings of fact made in the trial court are conclusive. Graves v. State, 512 S.W.2d 603 (Tenn. Crim. App. 1973).

Further, this court may not second-guess the tactical and strategic choices of counsel unless those choices are uninformed because of inadequate preparation. Hellard v. State, 629 S.W.2d 4 (Tenn. 1982). Counsel may not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276 (Tenn. Crim. App. 1980).

Here, the petitioner first complained that trial counsel failed to adequately communicate with him prior to the trial. At the evidentiary hearing, the petitioner agreed that trial counsel met with him "maybe six times up here at the courthouse plus six to seven times at the jail." He specifically complained that his trial counsel did not discuss possible defense strategies. He conceded that their total meeting time may have equaled up to twelve hours but contended that the collective duration of their communication was not enough under the circumstances.

The petitioner also asserted that his trial counsel failed to search for, locate, or interview a possible witness, Cathy Chunn, who may have burned some bloody clothes and who might have known the identity of another suspect. Ms. Chunn was not called as a witness at the evidentiary hearing on the claim for post-conviction relief.

The petitioner also complained that his trial counsel was not present during his preliminary hearing and did not obtain a copy of the transcript, thereby precluding use of the transcript for impeachment purposes at the trial. The petitioner acknowledged, however, that he did not have a transcript of the preliminary hearing and did not know whether one existed or if his attorney had a copy.

The petitioner further contended that trial counsel failed to gain access to an expert in DNA analysis. He submits that an expert could have provided possible defenses to the charge.

Finally, the petitioner claimed that his appellate counsel, Gregory D. Smith, had only one discussion lasting approximately 20 minutes with him. The petitioner pointed out that although his trial counsel had presented six possible grounds for relief in his motion for new trial, his appellate counsel only presented the issue of consecutive sentencing on direct appeal.

Mike Randalls, trial counsel for the petitioner, testified at the evidentiary hearing. He had

-3-

documented eleven meetings with the petitioner at the local jail and estimated that there were at least six other occasions where he counseled with the petitioner at the county courthouse. Trial counsel asserted that he discussed with the petitioner the facts of the case, the petitioner's prior social and criminal history, the nature of the charges, the possible range of punishment, and the possibility of a negotiated plea agreement. Trial counsel also testified that he reviewed with the petitioner the various photographs and lab reports which had been provided by the state, as well as the autopsy report and the state's witness list. Trial counsel also discussed with the petitioner possible DNA testing and received permission from the trial court for funds to be utilized for expert assistance in evaluating the state's DNA evidence. In fact, a defense expert determined that the state had properly conducted the DNA analysis. Trial counsel also testified that the petitioner supplied the name of Cathy Chunn after the trial. He explained that the petitioner was represented by two other attorneys at the preliminary hearing, for which there was no transcript. Trial counsel could not remember whether he had listened to a tape of the preliminary hearing, although "normally that is what [he does]." It was trial counsel's recollection that "there wasn't a tape or if there was it was such poor quality you couldn't listen to it."

Attorney Smith, the petitioner's counsel on direct appeal, testified that he had reviewed six volumes of trial testimony which included approximately 1,000 pages. He described the record as "one of the cleanest trials I had ever seen." Appellate counsel testified that he did not challenge the sufficiency of the evidence due to the limited scope of review and the overwhelming nature of the circumstantial evidence. Appellate counsel testified that he considered raising as an issue the trial court's failure to charge the lesser offense of negligent homicide but after research concluded that there was no merit to such a claim: "Basically it was an up or down in this case, yes or no." Appellate counsel also considered and declined to present the trial court's failure to grant a change of venue as a basis for appeal. He concluded that there was nothing in the record, such as affidavits in support of the possible prejudice, to support such a claim. Appellate counsel also believed that there was no basis for a complaint about the failure to supply more expert services under the ruling of State v. Barnett, 909 S.W.2d 423, 427 (Tenn. 1995). Finally, appellate counsel found no basis to the complaint that the state had failed to provide notice of exculpatory evidence.

The post-conviction court found trial counsel's preparation "to be virtually flawless." It classified the degree of communication between trial counsel and the petitioner, the trial performance of defense counsel, and the strategy during trial and on appeal as being well within the professional guidelines. The post-conviction court specifically ruled that the petitioner had failed to establish any prejudice due to the various deficiencies. We agree.

Any factual disputes between the petitioner and his trial counsel were resolved in favor of the state by the post-conviction court. The accredited proof is that there was adequate communication. Moreover, the petitioner has failed to explain how he might have been prejudiced by the absence of witness Chunn, who was not called to testify at the evidentiary hearing, or by the unavailability of a transcript of the preliminary hearing. This court may not speculate upon what prejudices might have occurred. The burden is on the petitioner to provide proof. Additionally, the trial court provided an expert to the defense to review the DNA evidence the state proposed to present. Because the defense expert found no deficiency in the testing performed by the state, there

was no particularized need for further funding. See Barnett, 909 S.W.2d at 430. Finally, the petitioner has failed to establish how the presentation of additional grounds for relief on direct appeal could have caused a different, more favorable result. Nothing suggests that a challenge to the sufficiency of the evidence, a claim that the state failed to produce exculpatory evidence, or an appeal of the trial court's refusal to change venue could have produced any possible relief. Because the defense at trial was that the victim was alive when the petitioner left her, this qualified as "an all or nothing" proposition leaving the record devoid of any evidence to suggest a charge of a lesser offense. See, e.g., State v. Langford, 994 S.W.2d 126 (Tenn. 1999). In summary, the petitioner has failed to establish how any possible deficiencies in the performance of either his trial counsel or his appellate counsel might have caused prejudice to his defense.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE