IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## JACK MAXIE WELCH v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. C95-41     J. Steven Stafford, Judge**

---

**No. W1999-00860-CCA-R3-PC - Decided June 20, 2000**

---

In this post-conviction appeal, Jack Maxie Welch claims counsel at his second degree murder trial was ineffective for failing to investigate and present evidence of his alleged diminished capacity. The lower court found that Welch failed to carry the burden of proving his claim, and on appellate review, the evidence does not preponderate against that determination. Accordingly, we affirm the lower court's denial of post-conviction relief.

**T.R.A.P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which WADE, P.J., and WOODALL, J. joined.

Stephen Scofield, Dyersburg, Tennessee, for the appellant, Jack Maxie Welch.

Paul G. Summers, Attorney General & Reporter, Mark E. Davidson, Assistant Attorney General, C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

### OPINION

Jack Maxie Welch is presently serving a sentence of twenty years in the Department of Correction for the second degree murder of his long-time friend and drinking companion, David Crawford. See State v. Jack Maxie Welch, No. 02C01-9604-CC-00134, slip op. at 2 (Tenn. Crim. App., Jackson, July 25, 1997). Dissatisfied with the representation he received at trial, Welch filed a post-conviction action alleging ineffective assistance of counsel. As relevant to this appeal, he claimed that his trial counsel failed to investigate and present psychiatric evidence to prove diminished capacity, thereby negating the *mens rea* of the crime. The trial court found that Welch failed to prove his claim and dismissed the petition. We have heard the oral arguments of the parties and reviewed their briefs and the applicable law. Because the evidence of record does not preponderate against the trial court's judgment, we affirm.

The Sixth Amendment of the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). When a defendant claims

ineffective assistance of counsel, the standard applied by the courts of Tennessee is "whether the advice given or the service rendered by the attorney is within the range of competence demanded by attorneys in criminal cases." Summerlin v. State, 607 S.W.2d 495, 496 (Tenn. Crim. App. 1980).

In Strickland v. Washington, the United States Supreme Court defined the Sixth Amendment right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, the appellant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and must demonstrate that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Constitution. Id. at 687, 104 S. Ct. at 2064. Second, the petitioner must show that counsel's performance prejudiced him and that the errors were so serious as to deprive the defendant of a fair trial, calling into question the reliability of the outcome. Id. at 687, 104 S. Ct. at 2064.

The petitioner's burden of proof in all post-conviction cases filed after May 10, 1995 is by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence. Strickland, 466 U.S. at 690, 695, 104 S. Ct. at 2066, 2069. The petitioner must demonstrate that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. Id. at 695, 104 S. Ct. at 2069. A trial court's findings of fact following a post-conviction hearing have the weight of a jury verdict. Bratton v. State, 477 S.W.2d 754, 756 (Tenn. Crim. App. 1971). On appeal, those findings are conclusive unless the evidence preponderates against the judgment. Butler v. State, 789 S.W.2d 898, 900 (Tenn. 1990).

This matter proceeded to hearing in the court below, at which time Welch and his trial attorneys testified and documentary evidence was presented. Welch claimed that prior to trial he informed his attorneys that he had numerous hospitalizations and other treatment for psychiatric concerns dating back to 1973. He claimed that he urged counsel to present evidence of his psychiatric history at trial. According to Welch, he suffers from alcoholism, post-traumatic stress disorder, depression, nightmares, flashbacks and stress related to his military service in Vietnam. Welch conceded that he had undergone a competency evaluation prior to trial, but he claimed the doctor who performed that evaluation talked to him for a total of 42 minutes and that they only discussed the facts of the crime. Further, he stated his belief that the outcome of the trial might have been different had the jury been informed of his mental health history.[1]

At the post-conviction hearing, Welch also offered voluminous medical and psychiatric records from treatment he received from the Veterans' Administration in 1988 through

---

[1]At trial, Welch did not testify; however, the state introduced his confession which showed that he and the victim had consumed a large quantity of alcohol together, and the fatal altercation with the victim began when the victim "began to bad mouth vets, and Vietnam," causing Welch to lose his temper. Jack Maxie Welch, slip op. at 3.

1993 and an affidavit of a physician who had treated him both at the Veterans' Administration Hospital in Memphis and within the prison system. This treating physician reviewed the records from the Veterans' Administration. In the affidavit, the doctor opined that prior to the date of the offense in January 1995, Welch "was suffering from depression and [was] deeply alcohol dependent . . . exhibited symptoms of post-traumatic stress disorder and periodically harbored suicidal and homicidal ideations." The doctor further opined that due to "alcoholism combined with [Welch's] depression, personality disorder and Viet Nam combat experience, . . . [Welch was] unable to conform his conduct to the requirements of the law and [lacked] the substantial capacity to appreciate, in the fullest sense of the word, the wrongfulness of his conduct." The medical records were admitted upon stipulation of the parties. However, the state objected to the admissibility of the treating physician's affidavit, and the trial court ruled that it was inadmissible hearsay.

To counter Welch's proof, the state offered the testimony of the two attorneys who represented Welch in the conviction proceedings. Both testified that they attempted to obtain Welch's medical records from the Veterans' Administration with limited success. The attorney who began the representation on behalf of the public defender's office acknowledged that he and Welch had discussed Welch's prior psychiatric and medical treatment and Vietnam experiences. This attorney went so far as to contact the Veterans' Administration regional counsel when he had difficulty obtaining Welch's medical records. This attorney requested a competency hearing for Welch, even after he received a report indicating that Welch was competent to stand trial. Shortly after the competency hearing, the attorney retired, and a second attorney took over the case.

Welch's second attorney testified that he diligently sought Welch's Veterans' Administration records and even requested a continuance of the trial setting in order to have more time to obtain the medical records and expert testimony regarding Welch's alleged post-traumatic stress disorder. The attorney acknowledged that he received records which indicated that Welch had indicated symptoms of post-traumatic stress disorder to Veterans' Administration personnel. He attempted to locate doctors who would testify about this in order to support a claim of diminished capacity; however, counsel was unable to locate a treating physician who would testify in this regard. He was frustrated in this effort by the high turnover of Veterans' Administration personnel. He believed he had been able to speak with some of Welch's doctors, but he could not recall their names. He said that the conversations he had with Veterans' Administration personnel focused on Welch's alcohol problems more than post-traumatic stress disorder. This attorney acknowledged that he did not receive all of the records from the Veterans' Administration, and he did not go to Memphis to view Welch's complete medical file. Based on the records that were provided to him, he did not expect to find a definitive diagnosis of post-traumatic stress disorder in the more comprehensive records maintained in Memphis. He testified that he was unaware of a procedure to admit the records as proof of diminished capacity in the absence of expert testimony. Further, counsel testified that he argued for a verdict of voluntary manslaughter based upon Welch's confession that he was an alcoholic who lost his temper with an obnoxious alcoholic but never meant to kill him. The transcript of counsel's closing argument was admitted to corroborate the content of the closing argument.

Based upon this evidence, the trial court found that Welch failed to carry his burden

of proving by clear and convincing evidence that counsel was ineffective and that he suffered any prejudice from this alleged ineffectiveness. Specifically, the lower court found that Welch had not produced evidence that he was suffering from post-traumatic stress disorder at the time of his crime. Although the court found the affidavit of Welch's treating physician inadmissible, it held that even if the affidavit were considered, it nevertheless failed to establish a diagnosis of post-traumatic stress disorder at the time of the crime.

As a prerequisite to analysis of Welch's claim, a brief exposition of the law of diminished capacity and legal insanity is in order. "Diminished capacity" is not a defense in Tennessee. State v. Phipps, 883 S.W.2d 138, 147-49 (Tenn. Crim. App. 1994); see also State v. Hall, 958 S.W.2d 679, 690 (Tenn. 1997), cert. denied, 524 U.S. 941, 118 S. Ct. 2348 (1998). "'Diminished capacity' is . . . a defendant's presentation of expert, psychiatric evidence aimed at negating the requisite culpable mental state." Hall, 958 S.W.2d at 688. In evaluating the admissibility of expert testimony on the issue, our supreme court has said that the focus is geared to "a showing of a lack of *capacity* to form the culpable mental intent," as opposed to mere evidence of "a particular emotional state or mental condition." Id. at 690 (emphasis added).

On the other hand, insanity *is* a defense under Tennessee law. Tenn. Code Ann. § 39-11-501(a) (1991) (amended 1995).[2] Insanity is shown by proof that at the time of the offense, "as a result of mental disease or defect, the person lacked substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the conduct to the requirements of law." Id.; see Graham v. State, 547 S.W.2d 531 (Tenn. 1977).

In this case, the prejudice prong of the Strickland analysis requires that Welch establish by clear and convincing evidence that if his convicting jury had before it the evidence presented at the post-conviction hearing, there is a reasonable likelihood that the jury would have concluded that due to a lack of mental capacity Welch was unable to form the knowing *mens rea* required for second degree murder. Thus, we focus our inquiry on the diminished capacity evidence that Welch presented at the post-conviction hearing.

The trial court ruled that the affidavit of the physician, who treated the defendant both at the Veterans' Administration and in the prison system, was inadmissible hearsay. We agree. See Tenn. R. Evid. 801, 802; Thomas Leon Smith v. State, No. 01C01-9705-CR-00178, slip op. at 12 (Tenn. Crim. App., Nashville, Jan. 20, 1999) (affidavits of post-conviction petitioner's character witnesses inadmissible as proof of counsel's ineffectiveness for failing to call character witnesses at trial). Welch claims in his appellate brief that the affidavit is admissible pursuant to Tennessee Rule of Civil Procedure 43.02. In the first place, the Rules of Civil Procedure generally are not applicable to actions under the Post-Conviction Procedure Act. Tenn. R. Sup. Ct. 28, § 3(B). Welch has cited no exception to the general rule. Second, Rule 43.02 covers motion hearings, not

---

[2]The law of the insanity defense recited herein is that as it existed at the time of Welch's crime. A substantially revised insanity defense statute took effect several months after the commission of the offense.

-4-

evidentiary hearings that serve as the functional equivalent of a trial on the merits. See Tenn. R. Civ. P. 43.02.

Welch also claims that the treating physician was exempt from testifying in court pursuant to subpoena under Code section 24-9-101. He further claims, without citation to the record, that no funding was available for the deposition of the treating physician. However, this argument is fatal in two respects. First, nothing in Code section 24-9-101 makes affidavits of those exempt from in-court testimony admissible. See generally Tenn. Code Ann. § 24-9-101 (Supp. 1999). Second, Welch has not demonstrated that funding was unavailable to him for the deposition. Even if Welch had been denied funding for a deposition, we are aware of no proposition of law by which such a denial would operate to allow admission of an otherwise-hearsay affidavit of the proposed deponent.

Furthermore, on the record before us, we would be loath to find the trial court in error for denying funding of expert services, which presumably would cover deposition fees and costs, if such motion had been made and denied. Assuming the treating physician's affidavit and the Veterans' Administration records had been submitted in support of such motion, we find nothing in them which speaks to Welch's mental capacity to form a culpable *mens rea* at the time of the crime. As noted in the text of this opinion, the records themselves cover 1988 through 1993, and the crime did not occur until 1995. With respect to the affidavit, the treating physician opined that the defendant met the test of legal insanity. See Tenn. Code Ann. § 39-11-501(a) (1991) (amended 1995). He further opined that the defendant suffered from certain emotional states or mental conditions (depression, alcohol dependence, suicidal and homicidal ideations) and that he *exhibited symptoms of* post-traumatic stress disorder. The treating physician's affidavit is noticeably absent of any opinion that Welch lacked the *capacity* to knowingly kill another, as opposed to mere evidence of his emotional state(s) or mental condition(s). See Hall, 958 S.W.2d at 690. Thus, the absence of diminished capacity evidence in the medical records and the affidavit would have provided support for a denial of funding for a medical deposition, had the trial court been called upon to rule in this regard. See Roy Earl Collins v. State, No. 03C01-9709-CR-00389, slip op. at 6 (Tenn. Crim. App., Knoxville, Sept. 16, 1998) (in non-capital cases, post-conviction petitioner entitled to funds for defense expert only if denial would deprive him of due process), perm. app. denied (Tenn. 1999); see also State v. Edwards, 868 S.W.2d 682, 697 (Tenn. Crim. App. 1993) ("Mere hope or suspicion that favorable evidence is available is not enough to require that such help be provided.") (citations omitted).

Thus, the trial court properly excluded the affidavit, and in reviewing Welch's appeal, we consider the evidence absent the treating physician's affidavit. In so doing, we see nothing which preponderates against the trial court's determination that Welch failed to carry his burden of proof by clear and convincing evidence.

We have reviewed the extensive medical records of the 1988 through 1993 treatment at the Veterans' Administration hospital which the petitioner presented at his post-conviction hearing in order to assess counsel's performance in not obtaining the bulk of these records and introducing them at trial. See Tenn. R. Evid. 803(6) (hearsay exception for use of records of regularly conducted

business). Several flaws suggest the futility - if not the detriment - associated with using the records at trial as petitioner has claimed counsel should have done. Not only do they fail to establish that the petitioner *ever* experienced post-traumatic stress disorder, much less that he did so at a time relevant to the 1995 offense on trial, but the records reflect that the petitioner's claim that he suffered from the disorder may have been contrived and that he may have feigned symptoms. Furthermore, assuming *arguendo* that the petitioner suffered from the disorder at a time that was relevant to the homicide, the records themselves do nothing to establish that the disorder would have diminished his capacity to knowingly kill the victim. Moreover, the petitioner's confession does not suggest that the killing was the result of a flashback or otherwise the product of post-traumatic stress disorder. The sheer volume of the records could have witnessed, perhaps effectively, to the pervasive nature of the petitioner's alcohol dependency, but the records would also depict an alcoholic man who was not responsible in pursuing treatment plans. They also reflect that the defendant had "homicidal ideations" and that he considered himself a "trained killer." Finally, we discern that the limited segments of the medical records which trial counsel had obtained prior to trial were representative and reflective of the petitioner's mental health problems and served to adequately inform counsel. Prior to trial, counsel had obtained discharge documents for most of the petitioner's hospital admissions, and these documents summarized the diagnoses and treatments which were detailed in the more extensive records for those admissions. The long and short of the matter is that we discern no deficiency of representation in counsel's failure to obtain full records that were produced at the post-conviction hearing nor in his failure to use the records as evidence.

On the other hand, counsel's failure to seek funding in order to obtain a psychiatric expert for use at trial at least suggests deficient representation. At the time of the trial in September 1995, Tennessee arguably recognized that an indigent defendant in a non-capital criminal case could obtain trial court approval for funding to employ an expert if he could demonstrate that he would suffer a denial of due process if the expert were denied. See State v. Evans, 710 S.W.2d 530, 533-34 (Tenn. Crim. App. 1985) (acknowledging rule of Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087 (1985), that federal due process may require expert funding for indigent defendant in capital case but finding that non-capital defendant failed to show an infringement of due process as a result of the court's denial of funding for a ballistics expert); State v. Edwards, 868 S.W.2d 682, 695-98 (Tenn. Crim. App. 1993) (trial court in non-capital case is authorized to approve funding for an indigent defendant's expert when defendant makes a threshold showing of a "particularized need" such that denial of request will constitute a deprivation of due process); State v. Joseph Barnett, No. 03C01-9304-CR-00113 (Tenn. Crim. App., Knoxville, June 28, 1994) (rejecting Ake rule in non-capital case and holding that funding is limited by statute to capital cases), rev'd, 909 S.W.2d 423 (Tenn. 1995) (an indigent defendant in a non-capital case who shows a "particularized need" for an expert in order to address a significant issue at trial is entitled to a state-funded, independent expert).[3] The medical records overwhelmingly show that the petitioner's alcohol problems dominated his life. Some of the medical records in counsel's possession before trial indicated that the petitioner, years before the homicide, may have been showing signs of "alcohol dementia." Faced with the

---

[3]The supreme court's opinion in Barnett was not released until November 13, 1995, which was shortly after the petitioner's trial.

prevalence of the chronic alcohol dependency issue, the higher call to duty in representing the petitioner should have spurred counsel to seek funding for a psychiatric expert. However, we need not determine whether the failure to do so was deficient performance under <u>Strickland</u>, because the petitioner has failed on two levels to show that prejudice resulted from the failure. First, he has made no showing that, had an effort been made to seek expert funding, the trial court would have been required to grant the request. Second, the petitioner has failed to show that, had an expert been funded and used at trial, the resulting testimony would have had any bearing upon the jury's decision. Accordingly, it is unnecessary for us to consider whether counsel's performance fell below the standard of competency required of attorneys in criminal cases.

## Conclusion

For these reasons, we conclude that the evidence does not preponderate against the trial court's determination that the defendant failed to show by clear and convincing evidence that representation was ineffective. The judgment is therefore affirmed.