IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MAY 1996 SESSION

FILED

June 09, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,                    )
                                       )
              APPELLEE,                )
                                       )   No. 02-C-01-9506-CC-00167
                                       )
                                       )   Hardeman County
v.                                     )
                                       )   Jon Kerry Blackwood, Judge
                                       )
                                       )   (Murder Second Degree)
JAMES IRVIN HARVEST,                   )
                                       )
              APPELLANT.               )


FOR THE APPELLANT:                     FOR THE APPELLEE:

C. Michael Robbins                     John Knox Walkup
Assistant Public Defender              Attorney General & Reporter
P.O. Box 700                           500 Charlotte Avenue
Somerville, TN 38068                   Nashville, TN 37243-0497

David S. Stockton                      Kathy Morante
Assistant Public Defender              Deputy Attorney General
P.O. Box 700                           450 James Robertson Parkway
Somerville, TN 38068                   Nashville, TN 37243-0493

OF COUNSEL:                            Elizabeth T. Rice
                                       District Attorney General
Gary F. Antrican                       302 Market Street
District Public Defender               Somerville, TN 38068
P.O. Box 700
Somerville, TN 38068                   James V. Norwood
                                       Assistant District Attorney General
                                       302 Market Street
                                       Somerville, TN 38068


OPINION FILED:_____


REVERSED AND REMANDED FOR A NEW TRIAL


Joe B. Jones, Presiding Judge


# O P I N I O N

The appellant, James Irvin Harvest (defendant), was convicted of murder second degree, a Class A felony, by a jury of his peers. The trial court found the defendant was a mitigated offender and imposed a Range I sentence consisting of confinement for fifteen (15) years in the Department of Correction. In this Court, the defendant raises numerous issues. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court the trial court should have granted the defendant's motion for funds to obtain an independent psychiatrist to assist the defendant in the presentation of the insanity defense. Thus, the judgment of the trial court is reversed and this cause is remanded to the trial court for a new trial.

The defendant has suffered from mental illness since he was 14 years of age, and he has been mentally retarded since birth. His mother is mentally retarded and was confined to Cloverbottom Development Center for years. As a result, he has been confined to institutions or halfway houses most of his life. He has been confined to the John Gaston Hospital (now the MED) psychiatric unit, the Memphis Mental Health Institute (MMHI), Arlington Developmental Center (ADC), the Western State Mental Health Institute (WSMHI), and the Middle Tennessee Mental Health Institute (MTMHI).

The defendant was first confined to WSMHI in 1970 and escaped later that year. He was apprehended by the Bolivar Police Department shortly after the escape. He was subsequently released in 1971. The defendant was determined to be mentally retarded. He was admitted because he became "totally irrational, extremely explosive, and had auditory and visual hallucinations telling him to turn over tables and feel like killing himself."

In 1972 the defendant was taken into custody by officers of the Memphis Police Department. Due to the defendant's conduct, the defendant was taken to the MED psychiatric unit. He was transferred to ADC. In 1973, the defendant was transferred between ADC and MMHI.

The defendant was again hospitalized in WSMHI in 1975. He exhibited temper tantrums and was hostile towards the staff and patients at ADC. It was decided the defendant needed to continue in-patient care at WSMHI due to his aggressive behavior

2

and inability to handle his frustrations. He stayed at WSMHI until March 1979 and was placed in a halfway house later that year.

The defendant was returned to MMHI in 1981. He claimed to be under the influence of spirit voices. His behavior was described as destructive and grossly psychotic.

In 1981 the defendant was transferred from MMHI to WSMHI because he was violent and physically threatening to the MMHI staff. He was diagnosed as having impaired memory of past events, being mentally retarded, having a psychosis, and experiencing auditory hallucinations. He attempted to commit suicide on two separate occasions. He was released in 1984 and placed in a halfway house.

The defendant was again hospitalized at WSMHI in 1985. He was diagnosed as suffering from acute schizophrenia, was said to be a loner, and was experiencing unpredictable behavior.

The hospitalization at WSMHI was prompted by his violent behavior at a halfway house. While staying in a halfway house, the defendant threatened the other residents and the staff. His behavior would change suddenly, and the behavior was unpredictable. He had rapid mood swings. He became violent without provocation. The defendant was hearing voices that "didn't make sense" to him, and "something had control of [his] brain." He was again diagnosed as suffering from paranoid schizophrenia with acute exacerbation. During this hospitalization, the defendant killed his roommate. He was charged with murder.

The defendant was sent to MTMHI, forensic services division, to determine if he was competent to stand trial and whether an insanity defense could be supported. He was confined at MTMHI, a secure facility, from 1986 to 1990. The defendant was thought to be a threat to other patients, and he was given a private room. Experts in the forensic section concluded the defendant did "not possess the capacity to appreciate the wrongfulness of his alleged offense and to conform his conduct to the requirements of the law." It was their opinion the defendant was not competent to stand trial, and an insanity defense could be supported.

The defendant appeared in the Circuit Court of Hardeman County. After a bench trial, the court found the defendant was not guilty by reason of insanity.

The defendant was subsequently returned to WSMHI notwithstanding a previous finding he was a danger to himself and other patients. On the night of April 9, 1994, the defendant killed the victim in this case. The forensic section found the defendant was competent to stand trial, and determined an insanity defense could not be supported.

The defendant filed his motion for funds to hire a psychiatrist after discovering the experts opined the defendant was competent to stand trial and the evidence would not support an insanity defense. The trial court denied the motion on the ground such assistance was only available in death penalty cases. In ruling, the court said:

> <u>I agree with you, Mr. Robbins, that these reports are inexplicable or at least confounding to the Court</u>. The record's going to indicate or at least for the purpose of the record, the Court will recall in September, 1986, Mr. Harvest was first brought before the Court in Case No. 4875 in which he was charged with another first degree murder case. Shortly after that, in September, Western Mental Health at that time filed a report which indicated at that time he was incompetent to stand trial and pursuant to that evaluation, he was judicially hospitalized for a period of six months wherein the Department of Mental Health was to report periodically regarding his competency as well as insanity at the time of the commission of the offense.
>
> Some time later, in October of 1988, the authorities at Western Mental Health or the authorities at -- in the mental health departments, concluded that his competency had been restored to him and he was returned to court but it was their considered opinion at that time that even though he -- they had restored or Mr. Harvest had been restored to competency, the defense of insanity could still be supported and at that time, the Court conducted a bench trial and, based upon the records, found Mr. Harvest to be not guilty by reason of insanity based upon the expert opinions that were rendered and their evaluation by the mental health experts. He was judicially committed in 1989 as a regard -- regarding that evaluation which found him to be not guilty by reason of insanity. And, presumably, he remained there in a judicial commitment posing a danger to himself and to others. Now we have -- now, we have another charge in 5734 and reviewing the report here, the report is that he is competent and he is -- and a defense of insanity could not be supported on the present charge of 5734. And I'm not sure what the gist of the rest of their recommendation is regarding the standard of judicial commitment on the old charge at 4875. I don't know whether their opinion is if he no longer is committable under the section which finds him to be a danger to himself or others, or what it is, but <u>it appears to be a myriad of contradictions</u>.
>
> But the problem that the Court has, quite frankly, is that this statute applies to capital cases, but this is not a capital case. And the State has provided this mental evaluation at State expense for Mr. Harvest and I don't know of any authority that

4

the Court has to order a second evaluation at State expense absent this being a capital case. <u>I don't know -- I know that this Mr. -- dealing with this gentleman since 1986, I think it's incumbent upon this Court more than any other case I probably have ever sat on, to listen to this proof as a 13th juror.</u>

The trial ensued. The defendant was convicted of murder second degree.

## I.

Historically, the right to funding to obtain an independent psychiatrist to assist the accused in evaluating the accused, to assist in the preparation of defense, and to testify as an expert witness was limited to capital cases. <u>See</u> <u>State v. Williams</u>, 657 S.W.2d 405, 411 (Tenn. 1983), <u>cert</u>. <u>denied</u>, 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984). In 1995 the Tennessee Supreme Court extended the right to independent psychiatric assistance to non-capital cases. <u>State v. Barnett</u>, 909 S.W.2d 423 (Tenn. 1995). The court said in <u>Barnett</u>:

> [T]he due process principle of fundamental fairness requires that a State which prosecutes an indigent defendant assure that defendant of a fair opportunity to present his defense. It is axiomatic that fairness cannot exist where an indigent defendant is deprived by poverty of a meaningful opportunity to defend when his liberty is at stake. The due process principle of fairness applies to all criminal prosecutions, and does not rest upon the severity of the sanction sought or imposed.

909 S.W.2d at 428.

In this case, the defendant is indigent. He has been and is being represented by a public defender. Consequently, the defendant is entitled to the benefit bestowed by <u>Barnett</u> if he can meet the threshold requirements mandated by <u>Barnett.</u>

## II.

## A.

Before an accused is entitled to the assistance of an independent psychiatric examination, the accused must establish that his or her sanity at the time of the offense is a significant factor at trial.  Barnett, 909 S.W.2d at 430.  This requires the accused to establish what is referred to as a "particularized need."  In Barnett the supreme court set forth what the accused must establish to fulfill the "particularized need" requirement:

> To establish particularized need, the defendant must show that a psychiatric expert is necessary to protect his right to a fair trial.  Unsupported assertions that a psychiatric expert is necessary to counter the State's proof are not sufficient.  The defendant must demonstrate by reference to the facts and circumstances of his particular case that appointment of a psychiatric expert is necessary to insure a fair trial.

909 S.W.2d at 431.

When making the determination of "particularized need," the "trial court should consider all facts and circumstances known to it at the time the motion for expert assistance is made."  Barnett, 909 S.W.2d at 431.  In this case, the trial court had knowledge of the defendant's mental health history.  The court sat in judgment of the defendant in 1988 when it was determined he was not guilty by reason of insanity.

**B.**

In the context of this case, the defendant established "particularized need" warranting the providing of funds for the defendant to obtain the services of a psychiatric expert to evaluate him, to assist in the preparation of the insanity defense, and, if possible, to testify in support of the insanity defense.  There are several reasons why this Court reaches this conclusion.

As previously noted, the defendant has been institutionalized at several mental health facilities since he was 14 years of age.  He was 38 years of age when the offense in question occurred.  The nature of the defendant's mental illness is set forth hereinabove.  In summary, he has been diagnosed through the years as being mentally retarded.  He has been diagnosed as having an impairment of his long-term memory, auditory and visual hallucinations, and a psychosis.  He has been diagnosed as a paranoid schizophrenic with

6

acute exacerbation. He is prone to unpredictable aggressive behavior resulting from sudden mood swings and can become violent without provocation. He has also suffered from other minor illnesses. His sole defense in the case sub judice was insanity at the time he committed the offense in question. Thus, the defendant's sanity at the time the offense was committed was a highly significant factor during the trial of this case.

When the defendant murdered a roommate in 1986, the experts found the defendant was incompetent to stand trial, and the medical proof would support an insanity defense. When the defendant was found to be competent, he was tried by the trial court without the intervention of a jury, and the court found the defendant was not guilty by reason of insanity. According to the medical records, the defendant's mental health did not change between 1986 and 1994.

In this case, the defendant murdered a second roommate in 1994. Although the state of his mental health had not changed during the ensuing eight years, the MTMHI forensic division found the defendant competent to stand trial, and found the medical evidence would not support an insanity defense. The report seems to trivialize some of the defendant's mental health problems, places no emphasis on serious mental health problems, and makes several findings which are inconsistent with prior findings of medical doctors and psychologists. The trial court called the report "inexplicable" and "confounding." The court further stated the report "appear[ed] to be a myriad of contradictions." Based upon the history of mental illness known to the court, the court stated it was "incumbent upon [the] Court more than any other I probably have ever sat on, to listen to this proof as a 13th juror." This is sufficient to support the need for independent psychiatric assistance.

There is an appearance of impropriety and conflict of interest when one state mental health facility evaluates the patient of another state mental health facility, especially when someone has been killed at the resident facility. The public could perceive the mental health facilities wanted to rid themselves of the defendant because he posed a serious problem to the resident facility. He needed to be placed in a secure facility, and he must be housed in a room by himself. In short, he posed a serious threat to other patients, staff, and himself since he had attempted to commit suicide on more than one occasion. The

7

public could also perceive the change in the evaluation may be to protect the mental health facility where the killing occurred from liability. Providing funds for the employment of a psychiatrist to assist the defendant to counter this new finding would remove the appearance of an impropriety and conflict of interest.

## CONCLUSION

Insanity was the only defense asserted by the defendant, and, based upon his prior history of mental illness, the defense was a significant factor during the trial of this case on the merits. Furthermore, the defendant established "particularized need." Therefore, the trial court should have authorized the expenditure of state funds for a psychiatrist to evaluate the defendant, assist in the insanity defense, and testify at the trial if called by the defendant.

While this Court has not addressed the other issues raised by the defendant, the law of the case shall not apply. The expert selected by the defendant may have evidence to admit in pretrial motions and the trial which may alter the rulings of the trial court.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:


_____
DAVID G. HAYES, JUDGE



_____
DAVID R. FARMER, SPECIAL JUDGE