# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 2000 Session

## STATE OF TENNESSEE v. TERRY EUGENE BALLARD

**Appeal from the Circuit Court for Williamson County**
**No. II-1196-344-B      Donald P. Harris, Judge**

---

**No. M1998-00201-CCA-R3-CD  - Filed September 22, 2000**

---

The appellant, Terry Eugene Ballard,[1] was convicted in the Williamson County Circuit Court of theft of property worth one thousand dollars ($1,000) or more, a class D felony. The trial court sentenced the appellant as a career offender to twelve years incarceration in the Tennessee Department of Correction. In this appeal, the petitioner presents the following issues for our review: (1) whether the trial court erroneously denied his ex parte motion for the appointment of an independent psychological expert at the state's expense; and (2) whether the evidence adduced at trial supports his conviction of theft. Following a review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES AND JERRY L. SMITH, JJ., joined.

Peter D. Heil, Nashville, Tennessee, and Trippe Fried, Franklin, Tennessee, for the appellant, Terry Eugene Ballard.

Paul G. Summers, Attorney General and Reporter, David H. Findley, Assistant Attorney General, and Jeff Burks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The appellant appeals his conviction in the Williamson County Circuit Court of theft of property worth one thousand dollars ($1,000) or more. The appellant's conviction arose from his theft of a Hewlett Packard computer from Computer City in Brentwood, Tennessee, on October 7, 1996. In this appeal, the appellant challenges both the trial court's denial of his ex parte motion for a state-funded psychological expert and the sufficiency of the evidence underlying his conviction of theft. A review of the procedural history of the appellant's case and the facts adduced at his trial is essential to the resolution of these issues.

---

[1]The appellant is also known as "Terry Wayne Battle."

## I. Background

On November 12, 1996, a Williamson County Grand Jury indicted the appellant for the theft of a computer from Computer City. On March 3, 1997, the appellant filed a notice of his intent to rely upon the defense of insanity or a claim of diminished capacity. In conjunction with his notice, the appellant filed a motion requesting a mental evaluation for purposes of determining his competency to stand trial and his mental state at the time of his offense. The appellant noted in his motion that he had previously been diagnosed with Post-Traumatic Stress Disorder and also noted that he was unable to provide any information to his attorney concerning the charged offense. Pursuant to the appellant's motion, the court ordered the Middle Tennessee Mental Health Institute to evaluate the appellant.

Dr. Rokeya Farooque, a psychiatrist with the Middle Tennessee Mental Health Institute, examined the appellant on July 15, 1997. According to Dr. Farooque, the appellant reported that he has experienced "black-outs" or fainting spells since the age of five or six. The appellant recalled that he was examined by doctors at Metropolitan Nashville General Hospital when he was a child, but the doctors were unable to determine the cause of the "black-outs." The appellant also reported that, in the early 1990s, he was stabbed by a fellow inmate while incarcerated in prison and was subsequently diagnosed with and treated for Post-Traumatic Stress Disorder. Moreover, approximately one month before the instant offense, the appellant and a friend were involved in a shooting in Washington, D.C. The appellant attributed his current symptoms of Post-Traumatic Stress Disorder to this shooting. According to the appellant, his primary symptom was recurring nightmares about being stabbed or shot. The appellant further asserted that he possessed no memory of the time period extending from his visit to Washington, D.C., until a meeting with his attorney in this case several months later. Accordingly, the appellant claimed that he could not recall committing the instant offense on October 7, 1996. Similarly, although the appellant was also charged with stealing computer equipment from a Sears Department Store on November 20, 1996, while released on bond in this case, he could not recall committing the theft.

In recording his diagnostic impressions, Dr. Farooque noted, "Rule out Post Traumatic Stress Disorder." More significantly, Dr. Farooque opined that the appellant's "behavior and comments did not raise the question of a present psychosis or other serious thought disorder." As to the appellant's claimed memory loss, Dr. Farooque observed that

> there is no psychiatric justification for this loss nor does it form the basis for a defense of insanity. From the information that has been supplied Forensic Services, it appears Mr. Ballard continued to function in an acceptable and appropriate manner when he returned to Tennessee from Washington, D.C.

Dr. Farooque concluded that a defense of insanity was not viable in the appellant's case, and the appellant was competent to stand trial.

Subsequently, the appellant filed a sealed, ex parte motion pursuant to State v. Barnett, 909 S.W.2d 423 (Tenn. 1995), and Tenn. Sup. Ct. R. 13 §5, requesting state funds to employ

an independent psychological expert, and he also filed a motion requesting an ex parte hearing on this issue. The court denied the appellant's motions. However, the trial court granted the appellant's motions to permit the withdrawal of his current counsel and for the appointment of new counsel. Represented by new counsel, the appellant again filed a notice of intent to rely upon the defense of insanity and also requested a second mental evaluation. On February 10, 1998, pursuant to the appellant's request, the trial court ordered a mental evaluation of the appellant by the Guidance Center in Franklin, Tennessee. The record before this court does not contain the results of any evaluation conducted by that organization. In any event, on February 18, 1998, the court also ordered the Middle Tennessee Mental Health Institute to again examine the appellant. The institute examined the appellant on March 31, 1998, and again concluded that a defense of insanity was not viable in the appellant's case, that the appellant was competent to stand trial, and that the appellant did not meet the criteria for judicial commitment to a mental health institute.

On May 19, 1998, notwithstanding the trial court's earlier denial of the appellant's ex parte motion, the court conducted an ex parte hearing concerning the appellant's request for funds to employ an independent psychological expert. At the ex parte hearing, the appellant contended that he required a psychological expert in order to present a claim of diminished capacity due to Post-Traumatic Stress Disorder or, alternatively, to present a defense of "involuntary intoxication." More specifically, the appellant's trial counsel related to the trial court that he had

> spoke[n] to . . . [the appellant's] mother. She said that . . . the impression she left me was that he was pretty much incoherent from the time of the shooting incident in 1996 in Washington, D.C., up to the end of that year including the time we're talking about in this case. She may be here . . . .

The appellant's mother did not testify at the ex parte hearing. However, the appellant did introduce numerous mental health and other medical records for the court's consideration.

The records submitted at the ex parte hearing[2] reflect that, at the time of the instant offense, the appellant was forty-three years old and married with five children. He possesses a General Educational Development ("GED") diploma and, when not incarcerated pursuant to a criminal conviction, has been employed laying carpeting and as a cook. The appellant's criminal history is extensive and, consistent with his criminal history, the appellant has been the object of several violent assaults during his lifetime. Most notably, the appellant suffered a gunshot wound to the face as a teenager and was stabbed by a fellow inmate in prison in 1991. Following the 1991 stabbing, the appellant first began to experience symptoms consistent with Post-Traumatic Stress Disorder, including insomnia, recurrent nightmares, "fearfulness," "intense anxiety," hypervigilance, and "increased startle response to unfamiliar inmates." The appellant also exhibited some "paranoid ideation," expressing a fear of additional attacks. For example, while incarcerated in prison in 1992 and 1993, the appellant reported that he felt at times that someone might be attempting to enter his

---

[2]Although the appellant originally filed these records under seal, the State filed a motion to this court to unseal the records for purposes of this appeal. Because the appellant did not oppose the State's motion, we granted the motion.

cell or might be hiding inside his cell. For treatment of these symptoms, the appellant was administered antidepressants, including Elavil and Trazodone.

In 1996, the appellant was released from prison on parole, and his mental condition seemingly improved. Thus, in April 1996, the appellant reported to the Dede Wallace Center that he was no longer experiencing symptoms of Post-Traumatic Stress Disorder and no longer required medication. However, as noted previously, the appellant was involved in a shooting in Washington, D.C., in September 1996, one month prior to the instant offense. This incident precipitated additional nightmares.

Notwithstanding a diagnosis of Post-Traumatic Stress Disorder, the appellant's mental health records consistently indicate the absence of any psychosis or significant thought disorder until September 1997, almost one year after the instant offense. Indeed, following the appellant's reentry into the Tennessee Department of Correction in late 1996, he did not report any complaints other than recurrent nightmares. Specifically, at no time did the appellant report any delusions or auditory or visual hallucinations, nor did the appellant mention any memory loss. Moreover, following a psychiatric intake examination of the appellant in January 1997, the Department's psychiatrist and psychological examiner concluded that the appellant "has no clinical evidence of psychosis or major affective disorder. No indication for psychotropic medication."

In March 1997, the appellant was transported to Washington, D.C., in order to testify in court proceedings, possibly concerning the shooting that had occurred in September 1996. At the Central Detention Facility in Washington, D.C., the appellant again underwent a psychological examination. Although the appellant was provisionally diagnosed with Post-Traumatic Stress Disorder and prescribed Elavil, the examiner noted that the appellant was oriented to time, place, person, and situation and that the appellant denied any problems with his thought content and process other than, perhaps, impaired concentration. Again, the appellant did not report any delusions or auditory or visual hallucinations, nor did the appellant mention any memory loss. The examiner concluded that there was no abnormality in the appellant's thought process.

According to the appellant's mental health records, the appellant first reported his memory loss to a mental health professional, as opposed to his attorney, in June 1997. In September 1997, the appellant first reported auditory and visual hallucinations to his psychological counselor at the Tennessee Department of Correction. Soon thereafter, psychological testing performed by the Department suggested for the first time

> the presence of a thought disorder and . . . poorly developed personality structure with few internal resources to utilize in responding to his environment. He tends to become easily overwhelmed and, during those times, his thought processes will become distorted and he will have difficulty managing his behavior. He also appears to lack empathy and harbors hostile and aggressive impulses. There were signs suggesting organic impairment.

The appellant's psychological counselor noted that the appellant appeared to be slowly "unraveling." However, a subsequent notation in the appellant's "Problem Oriented - Progress Record" at the Department also concedes the possibility that the appellant might be feigning illness.

After reviewing the above medical records, the trial court once again denied the appellant's motion for a state-funded psychological expert. In denying the motion, the trial court emphasized the psychiatric intake evaluation performed by the Tennessee Department of Correction following the instant offense. The court also noted that the results of two psychological examinations by the Middle Tennessee Mental Health Institute failed to support the appellant's claim that, at the time of the instant offense, he was suffering from any mental disease or defect that precluded his formation of the requisite mental state. Finally, the court noted that the facts of the instant case, as set forth during a preliminary hearing on a motion to suppress, did not suggest any diminished capacity. The trial court also took judicial notice of the appellant's recent conviction of the theft of computer equipment from a Sears Department Store while on bond for the instant offense. He noted that the facts of the Sears Department Store case were almost identical to the facts of the instant case and, similarly, did not suggest any diminished capacity. Indeed, on the contrary, the facts of both cases suggested planning by the appellant.

Immediately following the ex parte hearing and the denial of the appellant's motion for an independent psychological expert, the trial court conducted a bench trial of the appellant. At the appellant's trial, Robin Lynch, the general manager of Computer City, testified that he observed the appellant enter the store on October 7, 1996, and approach a display containing several computers packaged in boxes. The appellant picked up one of the boxes, placed the box on his shoulder, and carried the box outside the store to a van waiting in the parking lot. According to Mr. Lynch, the boxed computer was a Hewlett Packard computer worth approximately $2,899. The appellant did not pay for the computer and did not have permission to remove the computer from the store.

Mr. Lynch also recounted that he chased the appellant outside the store to the waiting van. As he approached the van, Mr. Lynch observed that the van's rear sliding door was ajar, and the boxed computer was lying in the rear compartment. Three individuals, including the appellant, were also inside the van. Mr. Lynch demanded that the appellant return the computer, whereupon the appellant and his companions closed the van door and drove away. Mr. Lynch recorded the van's license plate number, returned inside the store, and telephoned the Brentwood Police Department.

Approximately thirty-five minutes following the theft, the police apprehended the van containing the appellant and his two companions. The police transported Mr. Lynch to the scene of the suspects' arrests where Mr. Lynch identified the appellant as the man who had stolen the computer from Computer City. Mr. Lynch also identified the computer, which was still packaged in its box. At trial, Mr. Lynch again identified the appellant and identified a photograph of the boxed computer, testifying that he was present when the police photographed the computer. According to Mr. Lynch, the police returned the stolen computer to his store soon thereafter.

At trial, the State also presented the testimony of James Edward Gibson and David Dickson, officers with the Franklin Police Department. Officer Gibson testified that, on the afternoon of October 7, 1996, he stopped the appellant's van pursuant to a "BOLO" or "be on the lookout." The appellant was driving the van, and there were two passengers. Upon inquiry, the appellant informed Officer Gibson that he was returning home from a friend's house. However, the appellant was unable to provide the name or address of his friend. Moreover, Officer Dickson, who was assisting Officer Gibson, observed a computer box through the rear window of the van. Accordingly, the officers arrested the appellant and his companions. Mr. Lynch arrived at the scene soon thereafter and identified both the appellant and the stolen computer.

Officer Gibson confirmed that the boxed computer was removed from the appellant's van and photographed at the scene of the suspects' arrests. However, neither Officer Gibson nor Officer Dickson could recall who removed the computer from the appellant's van, nor could they recall who photographed the computer. Officer Gibson identified the photograph of the boxed computer, noting that, in the photograph, a dry magic marker board had been placed beside the computer and was marked with the number assigned to the appellant's case.

Finally, the appellant testified on his own behalf at trial, evidently having recovered from his memory loss. He asserted that one of his companions on the day of the theft, a woman named "Bay-Bay," removed the boxed computer from Computer City. According to the appellant, he believed at the time of the theft that she was collecting empty boxes because she was in the process of moving out of her current residence. The appellant conceded that, when the manager of Computer City chased his friend into the parking lot, he knew that she had taken more than an empty box. Nevertheless, he drove the van out of the parking lot. The appellant admitted that he had previously been convicted of robbery and attempted grand larceny.

Following the parties' presentation of proof, the trial court found the appellant guilty of the charged theft. The court conducted a sentencing hearing on July 17, 1998. At the conclusion of the hearing, the court sentenced the appellant as a career offender to twelve years incarceration in the Tennessee Department of Correction.

## II. Analysis
### a. The Trial Court's Denial of the Appellant's Ex Parte Motion for a State-Funded Psychological Expert

The appellant first contends that the trial court erroneously denied his ex parte motion for the appointment of an independent psychological expert at the state's expense. In Barnett, 909 S.W.2d at 431, our supreme court held that,

> when a defendant in a non-capital case demonstrates to the trial court
> in an ex parte proceeding that his sanity at the time of the offense is
> to be a significant factor at trial, the federal constitution, at a
> minimum, requires the State to provide the defendant access to a
> competent, independent psychiatrist who will conduct an appropriate

> examination and assist in evaluation, preparation, and presentation of
> the defense.

The burden is upon a criminal defendant to demonstrate a "particularized need" for expert assistance, i.e., the defendant must demonstrate by reference to the facts and circumstances of his particular case that expert assistance is necessary to protect his right to a fair trial. Id. A trial court should, in turn, consider "all facts and circumstances known to it at the time the motion for expert assistance is made" in determining whether a defendant has satisfied his burden. Id. See also Tenn. Sup. Ct. R. 13 § 5.

In challenging the trial court's application of Barnett and Tenn. Sup. Ct. R. 13 § 5 in this case, the appellant argues that the trial court improperly relied upon evidence outside the record. Specifically, he notes that the trial court denied his motion for a psychological expert based, in part, upon knowledge obtained by the court when it presided over the appellant's conviction of theft in a different case. The appellant concludes that, by requiring a trial court to consider "all facts and circumstances known to it" in deciding a motion for expert assistance, our supreme court in Barnett did not intend to vitiate the general rule that "a judge is not permitted to make an investigation of a case, even an inadvertent one, off the record, and then base a holding on the information obtained . . . ." State v. Hart, 911 S.W.2d 371, 375-377 (Tenn. Crim. App. 1995). See also Vaughn v. Shelby Williams of Tennessee, 813 S.W.2d 132, 133-134 (Tenn. 1991); State v. Miller, No. 02C01-9708-CC-00300, 1998 WL 902592, at *5 (Tenn. Crim. App. at Jackson, December 29, 1998).

The State responds that the appellant has waived his complaint by failing to object at the ex parte hearing to the trial court's consideration of the facts underlying his prior conviction. Moreover, the State cites this court's opinion in State v. Harvest, 967 S.W.2d 829, 832-833 (Tenn. Crim. App. 1997), in which we approved a trial court's consideration under Barnett of knowledge obtained by the court when it sat in judgment of the defendant in a different case.

We simply conclude that, even assuming that the appellant's interpretation of Barnett is correct, the facts considered by the trial court in the instant case and in Harvest were arguably subject to judicial notice under Tenn. R. Evid. 201. Prior proceedings and judgments in the same court are generally subject to judicial notice as they "are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Id. at (b)(2). See NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE § 201.3, at 43 (Michie ed., 3d ed. 1995)(public and court records can be the subject of judicial notice); see also State v. Nunley, No. 01C01-9809-CC-00395, 1999 WL 482408, at *5 (Tenn. Crim. App. at Nashville, July 9, 1999), perm. to appeal denied, (Tenn. 2000)("[c]ourt records fall within the general rubric of facts readily and accurately determined"); State v. Head, No. 01C01-9806-CC-00263, 1999 WL 343910, at **5-6 (Tenn. Crim. App. at Nashville, June 1, 1999)("[t]o be sure, the trial court was allowed to take judicial notice of its court records). Under Tenn. R. Evid. 201(e), it was incumbent upon the appellant to contemporaneously challenge the court's judicial notice of the prior proceedings. In the absence of a contemporaneous challenge, the noticed facts are taken as given for purposes of both trial and appellate proceedings. Nunley, No. 01C01-9809-CC-00395, 1999 WL 482408, at **4-5. See generally Tenn. R. App. P. 36(a).

The appellant additionally asserts that, under Barnett, 909 S.W.2d at 423, he adequately demonstrated a "particularized need" for a psychological expert. Specifically, the appellant notes that his mental health records contain evidence which tends to disprove the mental state required for the commission of a theft. State v. Hall, 958 S.W.2d 679, 689 (Tenn. 1997). The State again disagrees.

This court applies an abuse of discretion standard in reviewing a trial court's ruling on the necessity for expert assistance. Ruff v. State, 978 S.W.2d 95, 101 (Tenn. 1998); State v. Vallejo, No. W1998-00500-CCA-R3-CD, 1999 WL 1532153, at *2 (Tenn. Crim. App. at Jackson, December 17, 1999). "An abuse of discretion standard contemplates us giving the trial court the benefit of its decision as long as that decision is supported by material evidence and is not arbitrary, capricious or illegal." State v. Bordis, No. 01C01-9211-CR-00358, 1994 WL 672595, at *18 (Tenn. Crim. App. at Nashville, December 1, 1994). Applying this standard, we must conclude that the trial court acted within its discretion.

In summary, we note that, although the appellant was diagnosed with Post-Traumatic Stress Disorder at various times prior to the instant offense, the appellant's complaints consisted primarily of recurring nightmares and anxiety. Only in September 1997, almost one year after the instant offense, did psychological testing suggest the presence of a "thought disorder." As to the appellant's claims of memory loss, "'[f]ailure to remember later, when accused, is in itself no proof of the mental condition when [the] crime was performed.'" Thomas v. State, 301 S.W.2d 358, 361 (Tenn. 1957)(citation omitted). See also State v. Tate, No. 02C01-9605-CR-00164, 1997 WL 746441, at *17 (Tenn. Crim. App. at Jackson, December 3, 1997)(lack of memory does not constitute proof of a defendant's mental capacity at the time of his offense). Indeed, nothing in the appellant's mental health records prior to September 1997 suggests a lack of capacity to form the mental state required for the commission of a theft, nor do the facts of the instant offense suggest such a lack of capacity. This issue is without merit.

**b.      Sufficiency of the Evidence**

The appellant also challenges the sufficiency of the evidence underlying his conviction of theft. In this regard, the appellant carries the burden of demonstrating to this court that no "reasonable trier of fact" could have found the essential elements of the charged offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Tenn. R. App. P. 13(e). In other words, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In order to find the appellant guilty of theft of property worth one thousand dollars ($1,000) or more, the trial court was required to find beyond a reasonable doubt that (1) the appellant knowingly obtained or exercised control over property worth one thousand dollars ($1,000) or more;

(2) the appellant did not have the owner's effective consent; and (3) the appellant intended to deprive the owner of the property. Tenn. Code Ann. § 39-14-103 (1997); Tenn. Code Ann. § 39-14-105(3) (1997). In this appeal, the appellant contends that the State failed to establish that he stole anything other than an empty computer box. Specifically, the appellant notes that the State failed to introduce either the computer box or its contents at trial, introducing instead a photograph of the closed computer box. Moreover, the appellant asserts that the record is devoid of testimony that "the box was opened and a particular computer was identified inside." The State responds that Mr. Lynch's testimony established the contents of the computer box.

We initially note that submerged within the appellant's challenge to the sufficiency of the evidence is a challenge to the trial court's admission at trial of the photograph of the boxed computer. The appellant asserts on appeal, as he did at trial, that the State failed to properly authenticate the photograph. Tenn. R. Evid. 901. Specifically, the appellant argues that the State failed to establish a chain of custody of the computer from the time of its removal by police from the appellant's van until it was photographed by police. State v. Shead, No. 27, 1986 WL 13957, at *2 (Tenn. Crim. App. at Jackson, December 10, 1986). We conclude that, even assuming that the trial court erred in admitting the photograph at trial, any error was harmless. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

"As a general rule, there is no requirement that stolen chattels be introduced as exhibits into evidence." State v. Ashley, No. 01C01-9706-CC-00219, 1998 WL 498739, at *6 (Tenn. Crim. App. at Nashville, August 20, 1998). See also Wallis v. State, 546 S.W.2d 244, 249 (Tenn. Crim. App. 1976); State v. Williams, No. 02C01-9209-CR-00220, 1994 WL 553420, at *13 (Tenn. Crim. App. at Jackson, October 12, 1994); State v. Woodward, No. 03C01-9204-CR-00129, 1993 WL 20123, at *4 (Tenn. Crim. App. at Knoxville, February 2, 1993). In other words, the State may establish a theft exclusively through the testimony of a victim. As previously noted, Mr. Lynch testified that he was the general manager of Computer City and also testified that he observed the appellant enter his store and steal a box containing a Hewlett Packard computer worth approximately $2,899. The appellant did not challenge the introduction of Mr. Lynch's testimony at trial and does not properly challenge its introduction in this appeal. Moreover, both the appellant's testimony and circumstantial evidence corroborated Mr. Lynch's testimony concerning the contents of the box. See State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998), cert. denied, _ U.S. _, 119 S.Ct. 1501 (1999)(a crime may be established by direct evidence, circumstantial evidence, or a combination thereof). Accordingly, the evidence adduced at trial supports the trial court's verdict of guilt. This issue is likewise without merit.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____

NORMA McGEE OGLE, JUDGE

-9-