IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2001

## STATE OF TENNESSEE v. QUINTON A. CAGE

**Appeal from the Circuit Court for Montgomery County**
**No. 40000140     James E. Walton, Judge**

---

**No. M2000-01989-CCA-R3-PC - Filed August 7, 2001**

---

At the conclusion of a post-conviction evidentiary hearing, the trial court denied the Petitioner, Quinton Cage's, petition for post-conviction relief. The Petitioner presents one appellate issue: Whether the trial court erred in finding that the Petitioner received effective assistance of counsel at trial? After a review of the entire record, briefs of the parties, and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which DAVID G. HAYES, J., and THOMAS T. WOODALL, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Quinton A. Cage.

Michael E. Moore, Solicitor General; Jennifer L. Smith, Assistant Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On December 2, 1994, a Montgomery County jury convicted the Petitioner of aggravated rape, especially aggravated kidnaping, aggravated robbery, attempted aggravated robbery, and reckless endangerment with a deadly weapon. At the conclusion of a sentencing hearing, the trial court imposed sentences of 25 years for aggravated rape, 20 years for especially aggravated kidnaping, 8 years for aggravated robbery, 3 years for attempted aggravated robbery, and 2 years for reckless endangerment. All sentences were to be served consecutively except for the attempted aggravated robbery. Upon direct appeal, these convictions and sentences were affirmed by this Court. *State v. Quinton Cage,* No. 01C01-9605-CC-00179 (Tenn. Crim. App. 1999), *perm. app. denied,* (Tenn. 1999).

From this opinion, we set forth the salient facts surrounding the Petitioner's convictions.

On April 1, 1994, the victim left a retail store and as she approached her 1993 Ford Explorer, she was accosted by the Petitioner. The Petitioner pointed a gun at her and ordered her into the car. The Petitioner made her drive to a bank where he forced her to write a check for $500 and present it for cash. The victim wrote "help" on the bottom of the check. Before the check could be cashed, the Petitioner had the victim drive to an isolated spot behind a building where the Petitioner threatened to shoot the victim in the leg. The Petitioner ordered the victim into the back seat, where he raped her and then ejaculated. The Petitioner ordered the victim to give him $350 and the keys to her car. The victim was able to get out of the car and hid behind the barbeque pit until the Petitioner drove away in her car. The Petitioner picked up a friend, Robert Turley, and proceeded to Interstate 24 where they were seen by a Montgomery County Sheriff deputy. During a high speed chase, the Petitioner obtained speeds of over 100 miles per hour. The Petitioner eventually struck a guardrail and "flipped" the car. Petitioner told the deputy that Turley had kidnaped him.

Joe Minor of the Tennessee Bureau of Investigation testified that he examined the rape kit obtained from the victim and compared the same with a blood sample from the Petitioner. It was Minor's opinion that the Petitioner's DNA matched the rape kit.

On his own behalf, the Petitioner testified that he met the victim in the parking lot and she invited him into her car. The victim agreed to go with him to their "little secret place in the country"and had consensual sex with him. The Petitioner testified that he and the victim had seen each other approximately ten times prior this event. The Petitioner took her car because she slapped him, but denied taking her money.

FACTS

On February 4, 2000, Petitioner filed a petition for post-conviction relief on the single ground that the trial court lacked jurisdiction to try his case in violation of the United States Constitution. The trial court appointed counsel to represent the Petitioner and set an evidentiary hearing for July 27, 2000. At the hearing, it was agreed between the State and the Petitioner, that the petition for post- conviction relief be orally amended to reflect an allegation of ineffective assistance of counsel on the sole issue of a denial of an expert and or funds, citing *State v. Barnett,* 909 S.W.2d 423 (Tenn. 1993) violation.

At the evidentiary hearing, the Petitioner testified that he and his attorney discussed obtaining an expert for the Petitioner so that he could have a proper and fair trial because the State had so many experts and he had none. When asked what a DNA test would show, the Petitioner responded, "I couldn't tell you. I don't know." The Petitioner, in follow-up questions on the DNA tests testified:

Q.     Okay. So, there was a DNA test that you were requesting that would have shown what sort of spermias was found, etc.?

A.     Yeah.

Q.     Okay.  And do you think that if more detail had been given as to why that was needed that that may have changed this Court's mind or the Court of Appeals and benefitted your cases?

A.     No. It wasn't needed.

Q.     Okay.  Why do you say it was not needed?

A.     Because I said I had sex, but the sex was consensual.


The Petitioner stated that his counsel met with him four to five times prior to trial.  He was able to discuss with counsel any defenses, including the Barnett issue.  When asked was there anything else that he felt Mr. Goodlett either did or didn't do that handcuffed him at trial, the Petitioner testified, "Well, he -- no.  I can't really say he did."

During cross-examination, the Petitioner described his encounter with the victim as a lover's quarrel.  As to the necessity for a DNA test, the Petitioner stated:

Q.     Could you think of any way that a DNA expert could have helped you being as that was the situation?

A.     There was no need for a DNA expert.  It was irrelevant.

Q.     And why was it irrelevant, sir?

A.      Because I testified that I had sex.

Mr. Collier Goodlett, a public defender, testified that he was trial counsel for the Petitioner.  As part of the Petitioner's defense, Mr. Goodlett filed a motion in the trial court for a DNA expert.  After a hearing, the motion was denied.  Mr. Goodlett was asked what he hoped to accomplish with a DNA expert?  He replied:

A.     Well, what I had hoped was that he would not have testified.  But as I recall during the process of jury selection that -- the time at which that happened may be wrong, but in any event -- he slipped me a note during the early part of the trial that he wanted to testify.  And after that point when he testified that it was consensual, then that fight was, essentially, useless.

Had he not testified then I would have, one, at least gotten some proof to the jury from our expert as to how the test was conducted; whether my expert might have found some fault with the TBI's method, and particularly their statistical analysis.

. . . .

> The fact that he testified I felt -- and one of things I tried to do in this case, given the facts that were involved, was to try, quite candidly, and find as many places to hopefully put the Court of the State in error. Once he testified that avenue was effectively closed in my view.

Mr. Goodlett agreed that sometimes counsel can render ineffective assistance of counsel for reasons totally beyond their control. Candidly, Mr Goodlett stated that if he had an expert the direction of the case would be no different. The facts were against them and any doors that might have opened were effectively shut when the Petitioner chose to testify.

From the bench, the trial court ruled that its decision to deny the motion for a defense expert as to a DNA analysis was upheld by the appellate court and, thus, this matter has been determined on appeal. Further, the trial court found there was no proof that Mr. Goodlett's representation was ineffective, notwithstanding the trial court's denial of the pre-trial motion for a defense expert.

## ANALYSIS
## STANDARD OF REVIEW

The Petitioner asserts that his trial counsel prejudiced the Petitioner's trial. Further, the Petitioner contends that had he had the benefit of an expert for DNA analysis, the whole focus of the case could have changed but for the denial of the Petitioner's motion of an expert. The State counters that the Petitioner has failed to establish any deficiency in trial counsel's performance and this Court has previously found that the Petitioner was not entitled to the services of an expert for DNA analysis.

Although the Petitioner acknowledged that he had the burden of proof in his complaint, we disagree that this burden is by a preponderance of the evidence. The Petitioner filed this petition for relief in February 2000, thus, this petition is governed by the Post-Conviction Act of 1995 which provides that the Petitioner has the burden of proving his allegation by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f)(1997). Ordinarily, the post-conviction trial court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against those findings. *State v. Burns,* 6 S.W.3d 453, 461 (Tenn. 1999). In this case, the trial court did not file a written findings of fact and conclusions of law, but orally ruled from the bench as to its decision. A trial court is required to set forth written findings of fact and conclusions of law for each claim raised in a post-conviction petition. Tenn. Code Ann. § 40-30-211(b). Trial courts are encouraged to file such findings as the legislature indicated this statute is to aid an appellate court in the review of post-conviction proceedings. *See Swanson v. State*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). However, the conclusions of law in post-conviction proceedings, such as whether counsel's performance was deficient or whether that deficiency was prejudicial -- are reviewed under a purely *de novo* standard, with no presumption of correctness given to the trial court's conclusions.

*See Fields v. State,* 40 S.W.3d 450, 458 (Tenn. 2001); *State v. Burns,* 6 S.W.3d 453, 461 (Tenn. 1999).

The standard for establishing ineffective assistance of counsel is well established. To prove ineffective assistance of counsel at trial, the Petitioner bears the burden of showing both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of his case. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984); *State v. Taylor,* 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997). *Strickland* requires a two pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

The prejudice prong of the test is satisfied by showing a "reasonable probability" that the outcome of the proceeding would have been different had it not been for counsel's deficiencies in performance. *Strickland,* 466 U. S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. *Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). Courts, therefore, need not approach the test in a specific order, or even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S. Ct. at 2069; *Goad v. State,* 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.

When analyzing a Petitioner's allegations of ineffective assistance of counsel, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *Strickland,* 466 U.S. 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not, alone, support a claim of ineffective assistance of counsel. *Thompson v. State,* 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to a perfect presentation. *Denton v. State,* 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996), *perm. app. denied,* (Tenn. 1997).

As stated, the Petitioner believes that had he the benefit of an expert in DNA analysis, the whole focus of the trial *could have changed* (emphasis added) but for the denial of the motion by the trial court.

First, we recognize that the Petitioner has not factually nor legally met his burden in proving by clear and convincing evidence that trial counsel was deficient in counsel's representation. The facts in the record established that defense counsel anticipated DNA testimony, thus, a motion was filed for a defense expert to examine and, if necessary, contest the State's expert evidence. This matter was discussed with the Petitioner, but unfortunately the Petitioner elected to testify on his own behalf and informed the jury that the alleged rape was in fact, a consensual act. As defense counsel stated, "if he had an expert the direction of the case would have made no difference. The facts were against them, and if any doors had opened, were effectively shut when the defendant elected to testify." We agree with the State that the Petitioner has wholly failed to establish the deficiency prong under *Strickland,* 466 U.S. at 697, 104 S. Ct. 2069. We find that the trial court was correct in determining that the Petitioner failed to establish an ineffective assistance of counsel claim.

Second, the question of the denial of an expert in DNA analysis by the trial court was addressed upon direct appeal by this Court. *See State v. Quinton Cage,* No. 01C01-9605-CC-00179, 1999 WL 30595, at *7 (Tenn. Crim. App. 1999), *perm. app. denied,* (Tenn. 1999). This Court found the Petitioner failed to explain why the facts and circumstances of his particular case required the appointment of an expert to ensure a fair trial, citing *State v. Barnett,* 909 S.W.2d 423, 431 (Tenn. 1995). The issue of the denial of an expert for DNA analysis by the trial court has been previously determined. However, the question of defense counsel's ineffectiveness in presenting the motion was not previously determined. Tenn. Code Ann. § 40-35-401(d) (1997).

The Petitioner has failed to establish any facts that would have resulted in ineffective assistance of counsel, even for reasons totally beyond counsel's control. We agree with the State that the facts in this case do not fall within the narrow range of cases in which ineffective assistance of counsel may be presumed. *See United States v. Cronic,* 466 U.S. 648, 104 S. Ct. 2039, 80 L.Ed.2d 657 (1984). We find that the Petitioner's allegation of ineffective assistance of counsel is wholly without merit.

In conclusion, the trial court's judgment is affirmed.

_____
L. TERRY LAFFERTY, SENIOR JUDGE